WILLIAM F. GRAVES v. GILES W. MERRILL and Others.[1]

April 8, 1897.

Nos. 10,220—(221).

**Building Contractor's Bond—Action for Breach.**

Plaintiff made a contract with M. to furnish all materials and labor and build for plaintiff a house for a stipulated sum, to be paid as the work progressed, not exceeding 85 per cent. of the total amount of materials and labor furnished, the balance to be withheld until completion of the contract. M., as required by the contract, gave the plaintiff a bond, with E. as surety, indemnifying him against liens. *Held*, in an action against E. for a breach of the conditions of the bond, that the fact that the plaintiff, during the progress of the work. made payments to the contractor exceeding 85 per cent. of the contract price, without proof that such payments exceeded 85 per cent. of the total amount of the materials and labor already furnished for the construction of the house, did not constitute a defense.

Appeal by defendant Eaton from an order of the district court for Ramsey county, Brill, J., denying a motion for a new trial. Affirmed.

*Flandrau, Squires & Cutcheon*, for appellant.

Simonson v. Grant, 36 Minn. 439, 31 N. W. 861; Wheaton v. Wheeler, 27 Minn. 464, 8 N. W. 599; Allis v. Ware, 28 Minn. 166, 9 N. W. 666; Campion v. Whitney, 30 Minn. 177, 14 N. W. 806; Wager v. Brooks, 37 Minn. 392, 34 N. W. 745; Erickson v. Brandt, 53 Minn. 10, 55 N. W. 62; Bell v. Forrestal, 55 Minn. 431, 57 N. W. 55, 223; Tomlinson v. Simpson, 33 Minn. 443, 23 N. W. 864; Duluth v. Heney, 43 Minn. 155, 45 N. W. 7; National Inv. Co. v. Schickling, 56 Minn. 283, 57 N. W. 663; Reed v. McGregor, 62 Minn. 94, 64 N. W. 88; Harsh v. Klepper, 28 Oh. St. 200; Bank v. Lane,

[1] Reported in 70 N. W. 562.

8 Oh. St. 405; Erath v. Allen, 55 Mo. App. 107; Oberbeck v. Mayer, 59 Mo. App. 289; Bethune v. Dozier, 10 Ga. 235; Rowan v. Sharps' Rifle Mfg. Co., 33 Conn. 1; United States v. Tillotson, 1 Paine, C. C. Rep. 305, Fed. Cas. No. 16,524; Bank v. Douglass, 51 Ga. 205; General St. N. Co. v. Rolt, 6 Com. Bench (N. S.) 550; Eneas v. Hoops, 42 Jones & S. (N. Y. Super. Ct.) 517; Bragg v. Shain, 49 Cal. 131; Taylor v. Jeter, 23 Mo. 244; Calvert v. London Dock Co., 2 Keen, Ch. Rep. 638; Zimmerman v. Judah, 13 Ind. 286; Judah v. Zimmerman, 22 Ind. 388; Miller v. Stewart, 9 Wheat. 680, were cited.

*W. D. Cornish*, for respondent.

PER CURIAM. This is an appeal by the defendant Eaton from an order of the district court for the county of Ramsey denying his motion for a new trial. The cause was tried by the court without a jury, and judgment ordered upon the findings of fact for the plaintiff against the defendants in the sum of $2,397.02. The findings of fact are supported by the evidence. The facts are these: July 13, 1893, the plaintiff enters into a written contract with the defendant Merrill, whereby the latter agrees to furnish all labor and materials and build a dwelling house for the plaintiff, according to certain plans and specifications, for the agreed price of $16,109.45, to be paid in instalments as the work progresses, on the certificate of the architect in charge, in amounts not exceeding 85 per cent. of the total amount of materials and labor furnished at the building at the time the certificate is issued; the balance of 15 per cent. to be withheld until the contract is entirely finished and accepted, when the amount thereof will be incorporated in the amount of the final certificate, the condition being that, prior to first payment being made, the contractor should furnish a satisfactory bond to protect the plaintiff against liens to the extent of $25,000. The contract further provided that before each payment, if required, the contractor should give to the architect sufficient evidence that the premises were free from liens chargeable to the contractor.

Pursuant to this contract, the contractor gave to the plaintiff a bond, with the defendants Eaton and Rodger as sureties, in the sum of $25,000, conditioned that the contractor should promptly pay for

all material and labor furnished for the construction of the dwelling house, pursuant to the contract, before the filing of any mechanics' liens therefor, and fully indemnify the plaintiff from any and all such liens. This condition of the bond was not performed, in this: that liens were filed and adjudged to be valid against the plaintiff's premises for the construction of the dwelling house, and the plaintiff was compelled to, and did, pay, in excess of the contract price, $2,397.02, for the purpose of discharging such liens. This action was brought on the bond to recover the amount so paid.

The defendant Eaton answered, alleging, among other matters, that the plaintiff and the contractor Merrill, without the knowledge of the defendant, failed to observe and perform the terms of the building contract in respect to the payments to be made thereon; that instead of paying to the contractor only 85 per cent. of the total amount of material and labor furnished at the building, and withholding 15 per cent. thereof, the plaintiff paid to him a sum exceeding 85 per cent. of such material and labor, and did not retain 15 per cent. of the contract price thereof, by reason of which violation of the terms of the contract the liens were made larger than they otherwise would have been. These allegations were in issue, and the trial court's findings of fact as to them were as follows:

"Defendant Merrill performed the work provided for in said contract, and the same was completed, save in some unimportant particulars, on April 14, 1894. * * * The plaintiff paid said Merrill at various times during the progress of the work, on account of said contract price and upon the certificate of the architect, various sums, amounting in all to fourteen thousand eight hundred forty-seven 55-100 (14,847.55) dollars; the last payment being made upon said April 14, amounting to one hundred forty-five 72-100 (145.72) dollars. The last eleven payments, made at divers times from February 7 to April 14, inclusive, amounting to two thousand four hundred sixty-six 55-100 (2,466.55) dollars, were applied by said Merrill in payment for labor and material furnished him for use in, and used in, constructing said building under said contract. Plaintiff has not made other or further payments to said Merrill. It does not appear that the plaintiff knew at any time, until after the last payment was made to said Merrill, as aforesaid, that any of the material or labor used in or furnished for the erection of said building had not been paid for."

It is apparent from these findings that more than 85 per cent. of the contract price was paid by plaintiff to the contractor during the progress of the work, but there is neither finding nor evidence that

such payments at any time exceeded 85 per cent. "of the total amount of materials and labor furnished at the building."

The claim of the surety Eaton, stated in the exact words of his counsel, is this:

"There is but one question in this case. The building contract provided that not more than 85 per cent. of the price of the building should be paid before its completion. The defendant Eaton became surety for the builder against liens. The owner violated the contract, by paying $1,154.52 more than the 85 per cent. before building was completed; liens accrued; and instead of having in his hands 15 per cent., being $2,416.41, to pay them with, he had only $1,276.90. Did this violation of the original contract discharge the sureties? There is no question about the facts; they stand conceded."

Now, if the assumption of facts which counsel accepts as the premises of his proposition is correct, his conclusion that the surety was released may be conceded. But his premises are unsupported by either finding or evidence. The contract was not that no more than 85 per cent. of the contract price of the building should be paid during the progress of the work, but that such payments should not exceed 85 per cent. of the "total amount of materials and labor furnished at the building at the time said certificate is issued." Such is the plain reading of the contract, and such is the construction placed upon the language of the contract by the defendant in his answer. There is no room for construction or argument. The simple statement of the facts of this case is the argument of the case. It by no means follows that 85 per cent. of the contract price would equal or exceed 85 per cent. of the amount of materials and labor furnished. As the only breach of the building contract here claimed is that payments were made by the plaintiff in violation of the contract, and as there is no evidence in the record to support the claim, it follows that the order appealed from must be affirmed.

So ordered.

BUCK, J. I dissent. It may be unusual to state the facts fully in a dissenting opinion, but, at the risk of criticism, I feel impelled to do so in this case.

On July 13, 1893, the plaintiff, Graves, entered into a building contract with Merrill, one of the defendants, by which Merrill agreed to build a dwelling for plaintiff for the sum of $16,109.45, to be paid

as the work progressed, on certificates of the architect named in the contract, not to exceed 85 per cent. of the whole contract price, the balance (15 per cent.) to be withheld until the contract was entirely finished and accepted, when this amount was to be incorporated in the final certificate issued. Merrill also agreed to furnish Graves a good and satisfactory bond of $25,000, to protect him against liens to that amount, which he did, and the same was executed at the same time as the contract, the sureties being Rodger and Eaton, two of the defendants. The condition in the bond was as follows:

"The condition of the above obligation is such that whereas, the said G. W. Merrill has, by written contract of even date herewith, undertaken and agreed with the said William F. Graves, in consideration of the sum of $16,109.45, to construct for him upon lots five (5) and six (6) of Bryant's subdivision of block four of Palace addition to St. Paul a frame dwelling house, according to plans and specifications made by C. H. Johnston, the architect, and to furnish and pay for all labor and material required in the performance of his said contract: Now, therefore, if the said G. W. Merrill shall promptly pay for, or cause to be paid for, all labor and material which shall be furnished for the construction of said dwelling house under or pursuant to said contract, or in the performance thereof, before any mechanic's lien therefor is filed in the office of the register of deeds of Ramsey county, Minnesota, against said premises, and shall also fully indemnify and hold harmless the said Graves from any and all such liens, and fully protect said premises therefrom, then the above obligation to be void; otherwise, to remain in full force and virtue.

"G. W. Merrill. [Seal.]
"Wm. Rodger. [Seal.]
"Chas. Eaton. [Seal.]"

The contractor completed the building, save in some unimportant particulars, on April 14, 1894, on which day Graves moved into it. He made the first payment to Merrill August 21, 1893, and continued to make further payments from time to time until March 5, 1894, when he made a payment of $425, which, added to former payments, aggregated the sum of $13,971, paid up to that date; and he continued to make six more payments before the house was finished, amounting to $876.55, the last payment being $145.72, which he made on the day he took possession of the premises, April 14, 1894, the entire payment amounting to $14,847.55. Eighty-five per cent. upon the contract price, $16,109.45, is $13,693.03, which amount had been paid by Graves to Merrill up to and including March 3, 1894, more than one month before the contract was completed. The

total payment up to that date, therefore, amounted to $277.97 in excess of the 85 per cent., and the subsequent payments made by Graves, up to and including the payment made on the day he took possession of the dwelling, amounted in all to the sum of $1,154.52 in excess of the 85 per cent. which he was to withhold under the terms of the contract until it was entirely finished and accepted. Subsequently, Merrill made default in the payment for certain labor employed and material furnished and used in building said dwelling under his contract, and several parties brought actions against him under the mechanic's lien law, and recovered judgment liens against the property, amounting to the sum of $3,673.92; and plaintiff, in order to save his property from sale under said judgment liens, was compelled to pay the same. In doing so, he first applied the amount remaining in his hands unpaid upon said contract, viz. $1,276.90, and brought this suit upon the balance, viz. $2,397.02, for which he demands judgment, with interest from October 31, 1894.

Before stating the law which I deem applicable to this case, a further reference to some of the provisions of the contract is necessary: (1) The architect is made the agent of the owner of the premises. (2) The payments were all to be made under the certificate of the architect. (3) The final payment, including the 15 per cent., was to be paid within 30 days after the contract was completely finished. (4) The contractor was to perform and finish under the direction and to the satisfaction of the architect. (5) Before each payment the architect was authorized to require of the contractor good and sufficient evidence that the premises were free from all liens and claims chargeable to him. (6) The owner of the premises was authorized to retain out of any payment an amount sufficient to indemnify himself against any lien or claim for which he would be liable and chargeable to the contractor until such lien or claim should be effectually satisfied and discharged or canceled. (7) One of the paragraphs of said contract is as follows:

"And the said owner hereby promises and agrees with the said contractor to employ, and does hereby employ, him to provide the materials and to do the said work according to the terms and conditions herein contained and referred to, for the price aforesaid, and hereby contracts to pay the same, at the time and in the manner and upon the conditions above set forth."

At or before the time of making each payment, the plaintiff was furnished by the architect a certified written statement of the contract price, the amount previously paid, the amount then due, and the balance unpaid. Thus, the plaintiff, at the time of each payment, had before him the precise data as to whether he had or was about to pay more than the 85 per cent. It is not claimed that there was any mistake of the architect, and no ground for the plaintiff to plead ignorance of the exact state of the account between him and the contractor, Merrill. I assume, then, that plaintiff made the payments in excess of the 85 per cent. understandingly and intentionally, and the question is, were these payments such a violation of the original contract as to discharge the sureties? The trial court decided in the negative, and the only ground which I discover for its so holding was that

"It does not appear that the plaintiff knew at any time until after the last payment was made to said Merrill, as aforesaid, that any of the material or labor used in or furnished for the erection of said building had not been paid for."

Whether this was the sole ground or not upon which the learned trial court found against the sureties, I am of the opinion that the ruling upon the entire case was erroneous. The stipulation in the building contract for the retention of the 15 per cent. until the completion and acceptance of the work was as much for the indemnity of Rodger and Eaton as for Graves, the owner of the premises, and raises an equity in the fund thus reserved, and a disregard of such stipulation by the voluntary act of Graves operated to discharge the sureties. It is true that the bond was not given for the full performance of the original contract, but for indemnity against liens; yet it must be read and construed in the light and relation which it bears to that part of the contract to which, by its terms, it has reference. It expressly refers to the building contract, the name of the parties, the kind of building to be constructed, and the cost thereof, and that Merrill was to furnish and pay for the labor required in the performance of the contract.

The bond runs to the plaintiff, Graves, the owner of the premises, and the party to the original building contract; and while, by its terms, the sureties are obliged to save him harmless, and indemnify him against liens, he cannot be permitted to violate those terms himself,

and thus cast a burden upon the sureties by his own negligence or wrongdoing. It was with reference to this contract that the bond was executed. Graves cannot be permitted to say that he was merely a party to the bond, and hence that his liability is not measured by his default in grafting upon the contract its changed conditions. In order to state a cause of action, the plaintiff was compelled to allege a part of the terms of the contract, and their violation, as well as a breach of the conditions of the bond; and, to defend himself against the allegations in the defendants' answer, he deemed it necessary to plead in his reply the entire contract. Now, if any of its terms constituted the groundwork for an affirmative cause of action against the sureties, then a material violation of those terms by the plaintiff, to the injury or damage of the sureties, would constitute the basis, on their part, for a defense more or less effective, according to the materiality of the evidence adduced. Therefore the obligations of the sureties upon the bond must be determined with reference to the provisions of the contract and the bond bearing upon the same subject-matter, and the conduct of the parties as affecting the same.

If I concede that if the contractor had furnished the architect, before each payment, good and sufficient evidence that the premises were free from all liens and claims chargeable to the contractor, and he had done so, and that the sureties would have been bound thereby, yet no such evidence was required or furnished, and Graves made no attempt to learn whether any such liens existed, although, under the explicit terms of the building contract, he had the right to retain out of any payment due or to become due an amount sufficient to completely indemnify him against any such liens. The architect did furnish to Graves a certificate showing that Graves was paying to the contractor various sums greatly in excess of the 85 per cent., but he did not require of the contractor any evidence that the premises were free from liens, nor furnish Graves a certificate to that effect.

It is therefore self-evident that two causes tended to create that which plaintiff claims to constitute his cause of action against the sureties. These causes are neglect of the architect to require satisfactory evidence of no liens, and the omission of the plaintiff to ascertain if any lien existed, and his neglect to retain a sufficient sum out of any payment then due or to become due as against any such lien. Upon whom rested the responsibility or liability for this negligence? Cer-

tainly not on the sureties, for they had no control over the contractor, architect, or owner of the premises or parties who furnished labor or material. As Graves had the absolute right to retain from the several payments to be made a sufficient amount to indemnify him against liens, it was his duty to find out whether any liens existed, and to this end he had a right to inquire of his own architect as to such liens, and the contractor could not legally demand payment if he refused to furnish sufficient evidence that the premises were free from liens if required by the architect. Thus, knowledge of these liens, or negligence on the part of Graves in not knowing of their existence, is brought clearly home to him; and if, under these facts, he paid Merrill an excess of 85 per cent. in violation of the explicit terms of the contract, the liability is his, not that of the innocent sureties; otherwise, he would be taking advantage of his own wrong,—something which the law always abhors. The sureties were mere volunteers, expecting no profit or advantage, and should be dealt with in fairness and good faith. If Graves desired or was willing that any changes or alterations should be made in the terms of the original contract, he should have sought the assent of the sureties; otherwise, he must be deemed to have violated them at his own risk.

It cannot be said in this case that the sureties were not prejudiced by the payment of the sums in excess of the 85 per cent. The sum so paid withdrew the fund agreed upon as security, without the sureties' consent; and it was done by the principal, when he had the express authority, by the explicit terms of the contract, to retain it, not only for his own benefit, but, in so doing, it would have operated for the protection of his sureties. There are very eminent authorities holding that in such cases the sureties are released, no matter how trivial the change, or even if it be to the advantage of the sureties, and that they have a right to stand upon the very terms of their express engagements and undertaking. If the original contract is changed, the sureties are not bound by it in the changed form. They have a right to insist upon the strict terms of the contract, and cannot be forced to stand upon any new ones, and a variation from the original terms to which they do not consent is fatal.

That a disregard of such stipulations in a contract by the voluntary acts of the principal or creditor operates to release the sureties is fully sustained by authorities. Thus, in Calvert v. London Dock Co. (1838).

2 Keen, 638, where a contractor had undertaken to perform certain work, and it was agreed that three-fourths of the work, as finished, should be paid for every two months, and the remaining one-fourth upon the completion of the whole work, it was held that the sureties for the due performance of the contract were released from their liability by reason of payments exceeding three-fourths of the work done having been made to the contractor, without the consent of the sureties, before the completion of the whole work. To the argument that the extra advances really went into the work, and so inured to the benefit of the sureties, Lord Langdale, M. R., answered as follows (page 644):

"The argument, however, that the advances beyond the stipulations of the contract were calculated to be beneficial to the sureties, can be of no avail. In almost every case where the surety has been released, either in consequence of time being given to the principal debtor, or of a compromise being made with him, it has been contended that what was done was beneficial to the surety, and the answer has always been that the surety himself was the proper judge of that, and that no arrangement different from that contained in his contract is to be forced upon him; and bearing in mind that the surety, if he pays the debt, ought to have the benefit of all the securities possessed by the creditor, the question always is whether what has been done lessens that security. In this case the company were to pay for three-fourths of the work done every two months. The remaining one-fourth was to remain unpaid for till the whole was completed; and the effect of this stipulation was, at the same time, to urge Streather to perform the work, and to leave in the hands of the company a fund wherewith to complete the work if he did not; and thus it materially tended to protect the sureties. What the company did was perhaps calculated to make it easier for Streather to complete the work if he acted with prudence and good faith; but it also took away that particular sort of pressure which, by the contract, was intended to be applied to him. And the company, instead of keeping themselves in the situation of debtors, having in their hands one-fourth of the value of the work done, became creditors to a large amount, without any security; and, under the circumstances, I think that their situation with respect to Streather was so far altered that the sureties must be considered to be discharged from their suretyship."

In General S. N. Co. v. Rolt (1859) 6 C. B. (N. S.) 550, upon a second appeal of the case, the exchequer chamber held that a plea by a surety to an action to recover from him the excess of cost in completing a ship after the contractor had made default, and also a stipulated sum by way of damages for delay, to the effect that the owner, without the consent of the surety, had allowed the builder to anticipate a greater portion of the last two instalments specified in the contract, and thus materially

and prejudicially alter the surety's position, was a prima facie answer to the action; and that the onus lay upon the plaintiffs to prove the allegations of their reply that the advances were made with the knowledge and assent and at the request of the surety. It was argued on behalf of the plaintiffs, among other contentions, that, under the circumstances in the case, there was nothing to show that the defendant could be prejudiced in his capacity of surety by any of the advances made by the plaintiffs, and therefore he was not discharged from his liability of surety. The appellate court declined to hear counsel for the plaintiffs. In announcing the opinion of the court affirming the judgment below, Pollock, C. B., said (page 604):

"Now, certainly, prima facie, the withdrawal of a fund which is a security for the thing in respect of the not doing of which he is now called upon to pay damages, is a prejudice to the surety. He is not in the same situation with regard to his principal in which he ought to be placed. He is deprived of the security of the fund out of which the company might, in the first instance, have indemnified themselves. With regard to the point that there was constructive notice, that has very properly been abandoned by Mr. Welsby. It is clearly not tenable. Prima facie, the surety was prejudiced by the existing state of things. Whether there could have been any proof to show that, notwithstanding the appearance of prejudice, in reality none was or could be sustained, it is not at all necessary to inquire. It is, however, exceedingly difficult to conceive any state of things in which it must not to a considerable extent be a prejudice to a surety to have a fund withdrawn which would be in reality the security to the company with whom he is contracting, and to the surety who guaranties."

Holme v. Brunskill (1877) L. R. 3 Q. B. Div. 495, substantially reiterated the principle decided in the earlier cases. Cotton, L. J., with whom concurred Lord Justice Thesiger, said (page 505):

"The true rule, in my opinion, is that, if there is any agreement between the principals with reference to the contract guarantied, the surety ought to be consulted, and that if he has not consented to the alteration, although in cases where it is, without inquiry, evident that the alteration is unsubstantial, or that it cannot be otherwise than beneficial to the surety, the surety may not be discharged, yet that, if it is not self-evident that the alteration is unsubstantial or one which cannot be prejudicial to the surety, the court will not, in an action against the surety, go into an inquiry as to the effect of the alteration, or allow the question whether the surety is discharged or not to be determined by the finding of a jury as to the materiality of the alteration, or on the question whether it is to the prejudice of the surety, but will hold that in such a case the surety himself must be the sole judge whether or

not he will consent to remain liable, notwithstanding the alteration. and that, if he has not so consented, he will be discharged."

The rulings of the United States supreme court have been equally emphatic in upholding the right of a surety to stand upon the agreement with reference to which he entered into his contract of suretyship, and to exact strict compliance with its stipulations. Thus, in the case of Miller v. Stewart, 9 Wheat. 680, Mr. Justice Story, in delivering the opinion of the court, said (page 702):

"Nothing can be clearer, both upon principle and authority, than the doctrine that the liability of a surety is not to be extended by implication beyond the terms of his contract. To the extent and in the manner and under the circumstances pointed out in his obligation he is bound, and no further. It is not sufficient that he may sustain no injury by a change in the contract, or that it may even be for his benefit. He has a right to stand upon the very terms of his contract; and if he does not assent to any variation of it, and a variation is made, it is fatal."

In Reese v. U. S., 9 Wall. 13, Justice Field, delivering the opinion of the court, said (page 21):

"It is true, the rights and liabilities of sureties on a recognizance are in many respects different from those of sureties on ordinary bonds or commercial contracts. The former can at any time discharge themselves from liability by surrendering their principal, and they are discharged by his death. The latter can only be released by payment of the debt or performance of the act stipulated. But in respect to the limitations of their liability to the precise terms of their contract, and the effect upon such liability of any change in those terms without their consent, their positions are similar. And the law upon these matters is perfectly well settled. Any change in the contract on which they are sureties, made by the principal parties to it, without their assent, discharges them, and for obvious reasons. When the change is made, they are not bound by the contract in its original form, for that has ceased to exist. They are not bound by the contract in its altered form, for to that they have never assented. Nor does it matter how trivial the change, or even that it may be of advantage to the sureties. They have a right to stand upon the very terms of their undertaking."

Finney v. Condon, 86 Ill. 78, was a dispute over a building contract, and, although it was there held that the surety was bound by the estimate of the architect, yet the rule applicable to obligation of sureties in cases of the kind under consideration was that enunciated by Justice Scott, who said (page 80):

"The point relied on most confidently in the defense is that the sureties for the performance of the contract are released from all liability

thereon on account of payment exceeding 85 per cent. of the work done having been made to the contractor, without their consent, before the completion of the work. The law upon this subject seems to be, the reserved per cent. to be withheld until the completion of the work to be done is as much for the indemnity of him who may be a guarantor of the performance of the contract as for him for whom it is to be performed. And there is great justness in the rule adopted. Equitably, therefore, the sureties in such cases are entitled to have the sum agreed upon held as a fund out of which they may be indemnified, and, if the principal releases it without their consent, it discharges them from their undertaking. The principle is, the withdrawal of the fund agreed upon as security for the performance of the contract without his consent is a prejudice to the surety or guarantor. Sureties and guarantors are not to be made liable beyond the express terms of their engagements. They have the right to prescribe the terms and conditions on which they will assume responsibility, and neither of the principals can change those terms without the consent of the sureties, even with a view to avoid ultimate liability."

Bragg v. Shain, 49 Cal. 131, was a building contract, and payments were to be made in monthly instalments, of 75 per cent. of the value of the materials furnished and work done, and remainder when work was completed. A surety agreed that the building should be delivered free from all liens. There was default by the contractor in paying for material and labor, and liens were filed and paid by the owner of the building, who also had paid the contractor during the progress of the work more than the 75 per cent.; and it was held that the surety was discharged from liability.

In Brandt, Sur. § 345, the rule laid down is that:

"A surety for the completion of work to be performed by the principal, where, by the terms of the contract, the principal is to be paid by instalments, is discharged if the principal is paid faster than the contract provides. The surety is thereby deprived of the inducement which the principal would have to perform the contract in due time. There must be an assent by the surety to the creditors dealing with the principal debtor otherwise than in the manner pointed out by the contract, and it is no answer to say that it is for the advantage of the surety; or that he has sustained no prejudice."

In Simonson v. Grant, 36 Minn. 439, 31 N. W. 861, substantially the same rule is applied.

As the owner, according to the terms of the contract, was entitled to retain in his own hands an amount sufficient to completely indemnify him against liens until they were satisfied, and also obligated himself to retain 15 per cent. of the contract price until the building was com-

pleted and accepted, and he voluntarily abandoned this primary security, in which the surety had an interest with himself, we are of the opinion that his conduct operated to release the surety from any liability upon the bond, and the loss must be borne by the owner, through his own negligence or misconduct. In the recent cases, Prairie State Nat. Bank of Chicago v. U. S., and U. S. v. Hitchcock, 164 U. S. 227, 17 Sup. Ct. 142, the principles enunciated in several of the foregoing authorities were stated with approval; and, applying them to the case at bar, I am of the opinion that the order denying the motion for a new trial should be reversed.