## LENA LUMBER COMPANY *v.* BRICKHOUSE.

### Opinion delivered March 21, 1927.

1. PRINCIPAL AND SURETY—BREACH OF CONTRACT.—A contract to construct a house requiring payment of 80 per cent. of estimated value to contractor as work progressed, *held* not to have have been breached by paying full contract price without retaining 20 per cent., in absence of evidence that payments were in excess of 80 per cent. of estimated value, since such requirement does not limit payment to 80 per cent. of contract price.

2. PRINCIPAL AND SURETY—BREACH OF CONTRACT.—A surety on a contractor's bond and indemnitor, alleging that owner breached contract by paying full contract price without retaining 20 per cent. thereof, had the burden of proving a breach of the contract in manner claimed.

3. MECHANICS' LIEN—RIGHT TO SUE ON CONTRACTOR'S BOND.—Where a bond, furnished by a contractor under contract for construction of a house, provided that it was made for use and benefit of all persons entitled to liens, lienors *held* entitled to judgment on bond, although it had not been filed in office of circuit clerk.

4. CORPORATIONS—DEFENSE OF ULTRA VIRES.—A lumber corporation, seeking to avail itself of *ultra vires* of indemnity agreement executed by it in that it was not authorized by articles of incorporation, must plead such want of power as special defense.

5. CORPORATIONS—RIGHT TO DEFENSE OF ULTRA VIRES.—Where a lumber company executed indemnity agreement for the purpose of securing a contract to furnish lumber and millwork for construction on a house and had accepted benefits flowing from such contract, it cannot thereafter escape performance of the indemnity agreement on ground that it was *ultra vires* and void in not being authorized by articles of incorporation.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; modified.

*Ernest Briner* and *Brouse & McDaniel,* for appellant.

*John F. Clifford,* for National Surety Company, for appellee; *Ben D. Brickhouse, Linwood L. Brickhouse,* and *J. C. Marshall,* for Brickhouse.

McHANEY, J. On March 7, 1923, appellee, W. W. Brickhouse, being the owner of a certain lot at 1915 Izard Street, in the city of Little Rock, employed J. H. Levillian, a local building contractor, to build for him an eight-room brick veneer residence thereon, according to

certain plans and specifications made by Ray Burks, architect, and to furnish and supply all labor and materials therefor, for the contract price of $6,000. The contract between them is in writing, and it provides that the payments thereon shall be made "on certificates of superintendent, from time to time as the work progresses, to-wit, 80 per cent. of the estimated value of same, subject to additions and reductions as hereinafter provided. Said 80 per cent. to be paid as the work progresses on said residence, and the remainder on satisfactory completion and acceptance of the entire work, after the expiration of ten days." The following clause, written in the contract between them, was stricken out before the contract was signed. "It is agreed by the parties that —— per cent. of the contract price shall be held by the owner as security for the faithful completion of the work, and may be applied, under the direction of the superintendent, in the liquidation of any damages under this contract; furnishing to the owner a release from any liens or right of lien, also a sworn statement, as required by law, before commencing work on this contract, and hereby acknowledges receipt of notice to furnish same."

Appellee Brickhouse required Levillian to give a bond to complete the house according to the plans and specifications and in accordance with said written contract, and, on the same date, the appellant, National Surety Company, became surety on Levillian's bond, binding itself unto Brickhouse "(as well as to the persons who may become entitled to liens under the contract hereinbefore mentioned), in the sum of $6,000, * * * to be paid to the said W. W. Brickhouse, and to said parties who may be entitled to liens," etc. Said bond is conditioned for the due performance by Levillian of all the "covenants, conditions, and agreements" in said contract, "and shall duly and promptly pay and discharge all indebtedness that may be incurred by said J. H. Levillian in carrying out the said contract, and complete same free from all mechanics' liens, * * * as

well as all costs, including attorney's fees, in enforcing the payment and collection of any and all indebtedness incurred by said J. H. Levillian in carrying out said contract." Another clause in said bond is as follows: "This bond is made for the use and benefit of all persons who may become entitled to liens under said contract, according to provisions of law in such cases made and provided, and may be sued upon by them as if executed to them in proper person."

On the same date appellant, Lena Lumber Company, executed and delivered to appellee, National Surety Company, an indemnity agreement by which it agreed "to indemnify the company (National Surety Company) from and against any and all liability, loss, costs, damages, attorney's fees, and expenses of whatever kind or nature which the company may sustain or incur by reason or in consequence" of executing the bond for Levillian. The whole matter is based on the fact that Brickhouse wanted to build a house for $6,000 by contract with a bond. Levillian wanted the contract, but had to have help to make the bond. The Lena Lumber Company wanted to sell the lumber and millwork, and agreed to indemnify the surety company on the bond to get this contract from Levillian, and so it was done to the satisfaction of all concerned.

Construction work was begun, and, on July 9, 1923, the house was completed, and appellee and his family moved into it on July 10. Shortly thereafter his troubles began. Various material furnishers, within the time limited by law, served notices of their claims on him and thereafter filed affidavits for liens, with their accounts attached, in the proper office. It was agreed by counsel, in open court, that, up to and including September 25, 1923, appellee Brickhouse had paid out for labor and material $6,085.62, $85.62 in excess of the original contract price.

On October 1, 1923, appellant, Lena Lumber Company, brought suit in the Pulaski Chancery Court, alleging that it had furnished to Levillian for said house

lumber and other building material amounting to $1,801.84; that it had been paid $1,300, leaving a balance due it of $501.84, for which it asked judgment, and that same be declared a lien on said property. The various lienors filed interventions in said suit for the amounts due them. Appellees, in due time, filed an answer, later an amended answer and cross-complaint, against Lena Lumber Company, and still later an amended cross-complaint against both appellants, Lena Lumber Company and National Surety Company, and still later a substitute for amended answer and cross-complaint, setting out the bond hereinbefore mentioned, and alleging that, after the completion of the house, and after he had paid the contract price of $6,000, liens had been filed amounting to $2,300, which Levillian and the surety company had failed and refused to pay, for which he prayed judgment, for all costs and attorney's fees.

The court entered its decree as follows:

1.  In favor of Lena Lumber Company against Levillian and costs, and its complaint as to all other parties dismissed for want of equity ................................................................$ 501.80

2.  In favor of Brickhouse against the surety company for amounts paid by Brickhouse to settle liens of

    Crabb Electric Company...................$ 50.00
    Little Rock Paint & Wallpaper Co. 130.00
    Gregg Hardware Co. ..............................  36.85
    Bracy Bros. Hardware Co................. 145.00
    Attorney's fee taxed by court in
        this cause ................................... 150.00        511.85

3.  In favor of interveners who are decreed to have a lien on Brickhouse property against the surety company, as follows:
    R. A. Thiemie ................................... 434.12
    Henry-Johnson Co. ........................... 84.90
    D. W. Dwiggins & Co. ..................... 81.00
    Stuart Roofing Co. ........................... 66.50
    Arkansas Brick & Tile Co................. 396.22    1,062.74

4. In favor of Bracy Bros. Hardware Co.
against Brickhouse for extras................................. 198.50
5. In favor of surety company against Lena
Lumber Co. on its indemnity contract, which
included the $150 attorney's fee allowed
Brickhouse against it ............................................ 1,724.59
6. In favor of Lena Lumber Co. against Levil-
lian, including the $501.80 awarded it under
item 1, the total sum of.......................................... 2,024.59

(This was an error. The total amount should be $2,076.39).

From the decree against them as aforesaid, the National Surety Company and the Lena Lumber Company have appealed to this court.

There is no dispute about the correctness of the items due to the holders of liens or the lienable items paid by Brickhouse. Counsel for Lena Lumber Company feel that the court should have given it a lien for the $501.80 balance due it by Levillian, but, under the view we take of this case, if the bond is valid, it would be immaterial, for, as indemnitor for the surety, it would have to pay its own claim.

Counsel for both appellants earnestly insist that appellee, Brickhouse, breached the contract by paying to the contractor the full contract price without retaining 20 per cent. thereof, as they claim the contract requires. The germane provisions of the contract have already been set out, and we will not repeat them. But that is exactly what the parties refused to put in their contract. By one paragraph of the written contract it was provided that "20 per cent. of the contract price shall be held by the owner as security for the faithful completion of the work," but the contracting parties struck out this section and refused to make the contract with that provision in it. This was done, no doubt, for the reason that appellee required Levillian to give a bond "for the faithful completion of the work," and, so far as he was concerned, that was the only security he desired "for the faithful completion of the work." The strik-

ing out of this section of the contract is very significant that the parties did not intend that any part of the contract price should be retained by the owner. But they say that the clause preceding, which provides that the owner should pay, from time to time "80 per cent. *of the estimated value of the same* \* \* \* as the work progresses on said residence, and the remainder on satisfactory completion and acceptance of the entire work, after the expiration of ten days," means that he is required to retain 20 per cent. of the contract price. But not so. The 80 per cent. he is required to pay as the work progresses is not 80 per cent. of the contract price, but 80 per cent. "of the *estimated value of the same*."

It is shown by the evidence that the actual cost of the house was largely in excess of the contract price, the items being as follows:

| | |
|---|---|
| Paid by Brickhouse to September 25, 1923 | $6,085.62 |
| Liens thereafter paid by Brickhouse | 361.85 |
| Liens of interveners | 1,062.74 |
| Total cost of house | $7,510.21 |

It is not shown by the evidence just when Brickhouse made payments to the contractor or the amounts of such payments aggregating $6,085.62, or, if so shown, it has not been abstracted, and we cannot therefore say that he violated the contract by paying more than 80 per cent. of the estimated value of same, from time to time as the work progressed, even though it be conceded that it would be in violation of the contract to do so. Moreover, payments in excess of 80 per cent. of the estimated value or of the contract price, so far as we can tell from an examination of the evidence as abstracted, may have been made "after the expiration of ten days," as the contract provided he should do. He accepted and moved into the house on July 10, and it is agreed that, up to September 25, 1923, he had paid out $6,085.62. We cannot tell when these payments were made, and, in the absence of a showing to the contrary, we will presume

that the payments were made as the work progressed, in accordance with the contract, and the remainder after the expiration of ten days from the acceptance of the house. The burden was on appellants to show by a preponderance of the evidence that appellee breached the contract in the manner claimed.

The exact point we have been discussing was decided in the case of *Graves* v. *Merrill*, 67 Minn. 463, 70 N. W. 562, where the court used this language: "The contract was not that no more than 85 per cent. of the contract price of the building should be paid during the progress of the work, but that such payments should not exceed 85 per cent. of the 'total amount of the materials and labor furnished at the building at the time the certificate is issued.' Such is the plain reading of the contract, and such is the construction placed upon the language of the contract by the defendant in his answer. There is no room for construction or argument. The simple statement of the facts (of this case) is the argument of the case. It by no means follows that 85 per cent. of the contract price would equal or exceed 85 per cent. of the amount of materials and labor furnished. As the only breach of the building contract here claimed is that payments were made by the plaintiff in violation of the contract, and as there is no evidence in the record to support the claim, it follows that the order appealed from must be affirmed."

The case of *National Surety Company* v. *Long*, 85 Ark. 158, 107 S. W. 384, came to this court on two separate appeals. The first, being reported in 79 Ark. 323, 96 S. W. 745, had a clause in the contract between the owner and contractor very much like the contract in this case, which is as follows: "The said party of the first part agrees to pay to the party of the second part for said work the sum of six thousand six hundred dollars ($6,600), the contract price, to be paid in installments according to written estimates to be made by the architect or the superintendent as the work progresses, payments to be made not oftener than as allowed in the bond,

and said installments are to be 75 per cent. of the value of the work done and materials furnished and incorporated in the building, the remaining 25 per cent. of said contract price to be paid by the party of the first part to the party of the second part in ten days after the building is completed and accepted."

Appellant in that case urged that it was a breach of the contract for the owner to pay more than 75 per cent. of the contract price, but the court held that the clause meant 75 per cent. of the value of the work done and materials furnished and incorporated in the building, rather than 75 per cent. of the contract price, and, in disposing of the matter, used this language:

"Exactly the same question was raised in *Howard County* v. *Baker*, 119 Mo. 397, and the same conclusion was reached by the Missouri court that was reached by this court heretofore and now. It is true that this clause does not contemplate that there should be a material divergence between 75 per cent. of the contract price and 75 per cent. of the value of the work and materials furnished and incorporated in the building. The contract was evidently drawn in the contemplation that these terms would be, as they should be, identical. But in this case, and it may happen in many others, these terms were not identical. The 'contract price' and 'value of labor and materials furnished' may be widely separated. In this case the value of the work and material was over $3,000 more than the contract price. Therefore, where these two standards are different, it becomes necessary to see which must control; and there is no better or sounder rule to observe than to follow the language of the contract itself.

"It first agrees that the contract price shall be paid in installments, according to written estimates made by the architect or the superintendent, as the work progresses. This is a certain, definite and sensible agreement. Then there is another certain, definite and sensible agreement that the installments are to be 75 per cent. of the value of the work done and materials furnished and incorporated in the building. It would have

saved many words, if the other construction was the correct one, to have said that the said installments were to be 75 per cent. of the contract price. But that is not said; and it is expressly stipulated that the 75 per cent. is to be the value of the work done and materials furnished and incorporated in the building. The next clause provides that the 25 per cent. remaining of the contract price is to be paid ten days after the building is completed and accepted. This evidently contemplates that, after paying 75 per cent. of the value of the work and materials, there should still remain 25 per cent. of the contract price; and this is as it should be. But all things are not as they should be; and this is a case where it is the misfortune of some one that the contract price and the value of the work and materials were radically different. There are three provisions in this clause, each of them definite and certain of itself, and it is the duty of the court, in construing them, to give each its proper force and meaning; to harmonize them, if possible; if not, to give each the meaning which proper construction requires.''

We therefore hold that there was no breach of the contract shown on the part of appellee, Brickhouse.

It is next insisted that the interveners holding liens were not entitled to judgment on the bond, for the reason that same had not been filed in the office of the circuit clerk, and for the further reason that there was no privity of contract between the surety company and the interveners. The same question was raised in the recent case of *Stewart-McGehee Construction Co.* v. *Brewster,* 171 Ark. 197, 284 S. W. 53, where this court said: ''We cannot concur with this view. It is conceded by the company that the bond was executed under the authority of § 6912, *supra* (C. & M. Dig.), and, by its express terms the company as principal and the Fidelity and Deposit Company of Baltimore, Maryland, as surety, 'are held and firmly bound unto the State of Arkansas, for the use of * * *. and material furnishers and other persons having claims which might be the basis of liens,' etc. This court, in a

long line of cases, has ruled that, where a promise is made to one upon a sufficient consideration for the benefit of another, the beneficiary may sue the promisor for breach of his promise.'' (Citing cases).

In the present case the language of the bond is even stronger. It says: ''This bond is made for the use and benefit of all persons who may become entitled to liens under said contract, according to provisions of law in such cases made and provided, and may be sued upon by them as if executed to them in proper person.''

It is finally insisted by counsel for appellant, Lena Lumber Company, that its act in executing the indemnity agreement to the surety company is *ultra vires* and void, for the reason that it is not authorized to do so in its articles of incorporation. This contention is without merit, for the reason, first, it failed to plead that special defense, and second, for the reason that it was interested in getting the contract to furnish the lumber and mill-work in said house, which it did, and, having accepted the benefits flowing from said contract, it would be wholly unjust to allow it to escape performance of its contract, having received the benefits thereof. Relative to the first proposition, this court has held that, ''if a corporation seeks to avail itself of *ultra vires,* or for want of power to make a contract, it must plead that special defense.'' *Anderson-Tully Company* v. *Gillett Lumber Co.,* 155 Ark. 233, 244 S. W. 29; *Simon* v. *Caffe,* 80 Ark. 67, 95 S. W. 1011; *Winer* v. *Bank of Blytheville,* 89 Ark. 435, 117 S. W. 232.

Relative to the second proposition, above stated, there are numerous decisions of this court sustaining this principle. In *Richeson* v. *National Bank of Mena,* 96 Ark. 602, 132 S. W. 916, it is said: ''If the corporation has received the profits resulting from the compliance of the other party with the contract, it would be wholly unjust to allow the corporation to escape performance of the contract by which it realized these profits. As is said in the case of *Wright* v. *Hughes,* 119 Ind. 324: 'The rule is now too thoroughly established to be longer open to

question that, where a contract has been executed and fully performed on the part of the corporation, or the party with whom it contracted, neither will be permitted to insist that the contract was not within the power of the corporation'." A case exactly in point with this is that of *Wittmer Lumber Co.* v. *Rice,* 23 Md. App. 586, 55 N. E. 868, the syllabus of which is as follows: "Where one, having a contract with another to build a house, executed a bond to the other to secure the payment of any mechanics' liens or claims for material to be furnished in such building, and a lumber corporation becomes surety on such bond, in consideration of the contractor's agreeing to purchase from it material to be used in such building, such corporation, in an action by it to enforce a lien for material furnished in such building, cannot defeat a plea alleging its suretyship as defense by claiming the contract was *ultra vires,* since, by receiving the benefits of the contract, it was estopped from denying that it had power to become surety thereon."

The decree of the lower court gave judgment in favor of appellant, Lena Lumber Company, against Levillian in the total sum of $2,024.59. It is entitled to a judgment against Levillian for the sum of $501.80, balance due it for lumber and millwork; $1,062.74, being the amount of the liens of interveners for which judgment was rendered against the surety company; $361.85, being the amount of liens paid by Brickhouse for which judgment was rendered against the surety company; and $150 attorney's fee for Brickhouse in prosecuting his suit to enforce the payment of such liens, making a total of $2,076.39, for which appellant, Lena Lumber Company, is entitled to a judgment against Levillian, instead of $2,024.59, as allowed in the decree. The decree of the lower court will be modified in this respect, and, as modified, will be affirmed. It is so ordered.

### OPINION ON REHEARING.

McHANEY, J. In the original opinion we allowed excessive amounts under items 2 of the decree of the

lower court in favor of Brickhouse against the surety company, as follows:

| | Amount allowed | Correct amount |
|---|---|---|
| Crab Electric Co. | 50.00 | 45.00 |
| Little Rock Paint & Wall Paper Co. | 130.00 | 120.00 |
| Gregg Hardware Company | 36.85 | 36.85 |
| Bracy Bros. Hardware Co. | 145.00 | 100.00 |
| Attorney's fee | 150.00 | 150.00 |
| Totals | 511.85 | 451.85 |

Therefore the correct amount is $451.85, which results in a corresponding reduction of $60 in the total decree against the surety company and Lena Lumber Company. The opinion will be so amended. The motion for rehearing is otherwise overruled.