WILLIAM BROWN & als. versus GEORGE DONNELL.

An agent of a corporation may have authority to *transfer* a note by indorsement, but no authority to bind the corporation as indorser.

In an action by the indorsee of a note against the maker, the plaintiff is only required to prove an indorsement sufficient to pass the property in the note.

The authority of an agent of a corporation to indorse a note may be shown by other evidence than the by-laws.

An insurance company holding themselves out as solvent are not *conclusively* bound to know whether they are so or not; but if the officers neglect to use due care and diligence to know the condition of the company, and hold it out as solvent, when by use of such care and diligence they *might* know it was insolvent, there would be good reason for holding them guilty of fraud.

In an action against the maker, by the indorsee of a note, given to an insurance company, and by them transferred in payment for bank stock, purchased by them, the defendant cannot controvert the right of the company to purchase the stock.

ON EXCEPTIONS to the rulings of MAY, J., and MOTION to set aside the verdict. No questions of law arose upon the *motion.*

ASSUMPSIT upon a note given by the defendant to the Commercial Mutual Marine Insurance Company, and indorsed "Commercial Mutual Insurance Company, by George H. Folger, Pres't."

There was evidence on the part of the plaintiffs tending to show that Folger was president and treasurer of the company, and had been in the habit of negotiating the notes of the company, and negotiated and indorsed the note in suit before it was payable, with the sanction of the finance committee; and that it was negotiated to them to secure the note of E. H. Barker & Co., given them for bank stock transferred to the company at the time. [The by-laws of the company were put in evidence, but no copy came into the hands of the Reporter.]

The defendant introduced evidence tending to show that, soon after the note was given, the company was found to be insolvent, and that he surrendered his policy and demanded a return of the note; and other evidence, by which he

claimed that it was proved that the company were insolvent when the note was given.

Upon the evidence introduced as above stated, the presiding Judge, among other things, instructed the jury, that they would determine, from the whole evidence in the case, whether the president had or not a general authority to indorse notes held by the company; that, if they should find that Mr. Folger was the acting president and treasurer of the company, and that he indorsed the notes in suit with the consent and sanction of the finance committee, this evidence, taken in connection with all the other evidence in the case relating to the manner in which the notes of the company had usually been indorsed when negotiated, and to the president's authority to indorse notes for the company, if this testimony was believed, would be sufficient to authorize them to find that Mr. Folger, as president and treasurer, had authority to indorse the note in suit; and directed them, that, if they should find that he had such authority, and that the note in suit was properly indorsed by him, then the plaintiffs would be entitled to recover, unless the defendant had shown some general ground of defence.

That, whatever might have been the secret understanding between the president and the company as to his power to indorse notes, still if he had general authority to indorse notes as before stated, and if he did indorse this note to the plaintiffs in the usual course of business, and they were ignorant of any such understanding or restriction, the indorsement was valid, and no restraint which is found in the by-laws of the company upon his authority would affect the validity of the indorsement. That, if the insurance company was insolvent when the note in suit was taken, and the agent of the company who issued the policy and took the note therefor knew that it was insolvent, and did not communicate the fact to the defendant, the omission to do so would be a fraud upon the defendant, and entitle him to avoid his liabilities upon the note, unless it was indorsed before it became due, and came into the hands of the plaintiffs as innocent holders for value; and they would be re-

garded as innocent holders if they took it in the usual course of business,.fairly, and without any knowledge of the fraud existing in its original inception, and unattended by any circumstances justly calculated to excite suspicion; and further, that if the note was fraudulent in its inception, or fraudulently obtained from the defendant, the burden of proof was upon the plaintiffs, to satisfy the jury that they came by it in the manner just stated, before it fell due. And, if they failed to do so, such fraud, if it existed, was a defence to this suit.

That if the officers of the company who took the note for the policy did not know that the company was insolvent, but, on the contrary, believed the loss would be paid if any ensued, they would determine whether the issuing of such policy for the note, under such circumstances, was any fraud, though the company was, in fact, then insolvent.

That if the company indorsed the note to the plaintiffs before maturity as collateral to, and for the purpose of securing the due bill given by E. H. Barker & Co. to the plaintiffs, at the same time the due bill was given, and if the plaintiffs thereupon, at the same time, gave up the notes which they held against the company, and which were indorsed by E. H. Barker & Co., then the indorsement of the note may properly be regarded as having been made in the usual course of business and the plaintiffs will be entitled to recover, notwithstanding the note was fraudulently obtained from the defendant, provided the jury are satisfied that the plaintiffs were ignorant of the fraud, and that the indorsement of the note was unattended by any circumstances justly calculated to awaken suspicions and put the plaintiffs on their guard in relation to such fraud.

The defendant, among other things, requested the presiding Judge to instruct the jury — first, that if the insurance company had no funds to be invested and were actually insolvent when they undertook to purchase the bank stock of the plaintiffs, the officers of this company had no authority to make such purchase.

2. If, by reason of insolvency, the company had no funds to be invested, had no just expectation of any surplus funds to be invested, the officers of the company had no authority to make such purchase.

3. If they had no authority to make such purchase, they had no authority afterwards to pledge the note to secure the payment for the purchase.

4. If the company held themselves as solvent, and undertook to do business as a solvent company, they are to be held to know whether they are so or not, and if they were, when this note was received by them, actually insolvent, this matter is to be treated as if they knew they were so. These requests were all refused.

5. If the company were, at the time they obtained the note in suit for the policy issued therefor, and, for a period of years before that time, had been insolvent; the act of procuring the note for the policy was a fraud upon the defendant.

This request was given, with the qualification that it would be so if the officers of the company then knew the company was insolvent.

6. That the president had not by the by-laws general authority to indorse notes.

This was refused.

The verdict was for the plaintiffs, for the amount of the note, and the defendant excepted.

*E. H. Davies*, for the plaintiffs.

*Gilbert & Sewall*, for the defendant.

The opinion of the Court was drawn up by

DAVIS, J.—This is a suit by an indorsee against the maker of a promissory note, given to the Com. M. M. Ins. Company, and indorsed in the name of the company, "by G. H. Folger, President." The principal defence at the trial, was, that Folger had no authority to make the indorsement. The case comes before us on exceptions to the

instructions given to the jury, and refusals to give certain instructions requested by the defendant.

It was not claimed by the plaintiff that the *by-laws* of the corporation conferred a *general* authority upon the president to indorse notes belonging to the company. That the power conferred by the by-laws was a *restricted* one, and that a *general* authority could only be found from other evidence in the case, was in accordance with the instructions given, which we think were correct. There was, therefore, no reason for giving the instruction embraced in the last request. The jury were, in fact, substantially instructed that the by-laws alone conferred no such *general* authority.

It is a point that has often been overlooked in cases like this, that the authority to be proved is not one to bind the corporation by a contract of *indorsement*,—but simply an authority to transfer the property of the company. Though generally, they are not always, the same. The payee of a note may be estopped by his conduct from claiming property in a note, when he would by no means be held liable as an indorser. This more frequently happens when notes are transferred by agents of corporations, with the knowledge and implied assent of the officers and members thereof. But there are cases where the same principle has been applied to individuals. Thus, a note was given to a wife, during coverture. By the *lex loci*, the common law not having been changed by statute, the note belonged to the husband, and could be indorsed only by him. He told the wife she might have the note, and do what she pleased with it. She indorsed it; the indorsee brought a suit thereon in his own name; and it was held that the husband was bound by the indorsement, as made by his consent and authority. *Stevens* v. *Beals*, 10 Cush., 291. It would not have been pretended that he was liable thereon as indorser.

If the indorsement is sufficient to pass the property, so as to protect the maker in paying the note, that is all that is necessary to render him liable to the indorsee. The instruc-

tions in this respect were as favorable to the defendant as he could claim.

It was contended at the trial that the company were insolvent at the time they issued the policy for which the note was given, and that the note was fraudulent in its inception for that reason. And the jury were instructed that if, when the policy was issued, the company were insolvent, and this fact was known to the officers who issued it, and took the note therefor, then the note was obtained by fraud, and was void, except in the hands of innocent indorsees.

The defendant requested the Court to instruct the jury that, "if the company held themselves out as solvent, they are to be held to know whether they are so, or not, and, if insolvent, the matter is to be treated as if they knew they were so."

This request was refused, and, we think, rightly. The officers of a mutual marine insurance company can seldom know absolutely that it is solvent. We think they should be held to use due diligence and care to keep informed in regard to the ability of the company to pay the losses insured against; and if they should be guilty of negligence in this respect, issuing policies when, if doing business as prudent and careful men, they *might* know the standing of the company and that it was insolvent, there would be good reason for holding them guilty of fraud. But no such instruction was requested.

Whether the company has the right to purchase bank stock, and transfer their assets in payment therefor, is a question which their creditors might have raised, in another form. But not having been raised elsewhere, it cannot be controverted by the defendant in this suit.

*Exceptions and motion overruled.*

*Judgment on the verdict.*

TENNEY, C. J., RICE, MAY, GOODENOW and KENT, JJ., concurred.