## George v. Cutting.

If upon marriage the personal property of the wife remained in her possession and control without anything done by the husband to reduce it to his possession, and, while the property remains in that situation, the wife sells part of it and takes a note for it payable to herself or order, in an action on the note by the husband he is estopped to deny that the wife had authority to sell the property and take the note.

In such case the wife has implied authority to endorse the note in her own name, and her endorsement made before revocation of the authority will transfer the property in the note to the endorsee.

Assumpsit on a promissory note signed by the defendant, dated January 27, 1859, and payable to Anna George, then the plaintiff's wife, or order, on demand. The action was commenced on the 10th of January, 1863. On trial the following facts appeared :—

The plaintiff was married on the 12th of December, 1858, and then resided in Newport village. His wife then lived in another part of the town on a farm, which she held and owned in her own right; she also had personal property on the farm, consisting of cattle, hay, &c. For two months after their marriage, the plaintiff resided on his place in Newport, and his wife on her farm. She took care of her stock about two months of that winter, and some time in the ensuing spring she sold the farm making her own bargain and taking the consideration to herself with the assent of her husband, who joined with her in the conveyance. The note in question was given by the defendant for a cow and two calves, which were the wife's at the time of the marriage and remained on the farm till the time of the sale, when they were delivered by her to the defendant, who gave the note for them at the time of the delivery.

In November, 1859, some difficulty happened between the plaintiff and his wife, and the day after this occurred the plaintiff gave the defendant notice not to pay the note to his wife. The plaintiff and his wife then separated and have not lived together since.

In July, 1860, the defendant was sued on this note in the name of Jeremiah S. Noyes as endorsee. The name of the wife alone appears on the note as endorser. It did not appear when the note was endorsed nor upon what consideration. On the 13th of August 1860, after the suit of Noyes was commenced, the defendant gave the plaintiff notice of it in writing and offered to pay him upon indemnity; in the same writing the defendant gave the plaintiff notice that unless he received indemity he should pay the note to Noyes, and afterward, not having received any indemnity, the defendant paid the note to the attorney of Noyes and produced it on the trial of this action.

The court instructed the jury that the property owned by the wife at the time of the marriage with George, remained hers unless the husband reduced it to his own possession; "whether the husband has thus reduced her property to his possession may not depend upon any technical rule or the concurrence of any particular facts, except that the *intention* must exist and be carried into execution." And this intent so executed must be gathered from the evidence in the case.

The right of the husband to the wife's property is regarded as a mar-

ital right which he may waive or insist on as he pleases, and which if he does waive, the goods remain the property of the wife. Such waiver may be shown by an *agreement* on the part of the husband, express or implied, either before or after the marriage, that the property shall remain hers to control and use and dispose of at her pleasure.

That if the jury believe that George looked on and saw his wife sell and dispose of the property which constituted the consideration of the note in question, and that he assented to such sale, he was bound by it, and could not afterwards reclaim the property sold (or the note given therefor to the wife,) without her consent and to her prejudice, or to the prejudice of any person interested in said note. An authority to sell her property gave to the wife an authority to take the note in her own name, and to negotiate it and endorse it to another.

The court were requested by the plaintiff to charge the jury:

1. That if George, while the note remained in his wife's hands, made claim to it, and notified the defendant that he so claimed it, and that defendant must pay it to him, this was a revocation of all authority that he might have conferred upon his wife to dispose of it, and a revocation of her title to it.

2. If George waived his right to the property, which was the consideration of the note, that did not prevent his asserting a right to reduce to possession the note while it remained in her hands.

3. If plaintiff at any time waived his marital rights over the property of Mrs. George this was a waiver that he had a right to revoke at any time during the marriage while the property remained in her possession, and if he did revoke such waiver, he would have a right to reassert his marital rights to all such property as remained in her possession at the time of such revocation.

4. That the transfer of the note, whether by endorsement or otherwise, to Noyes by Mrs. George, would not enable him to maintain an action upon it in his own name, and therefore the defendant could not be compelled to pay the note to him.

The court did not charge the jury agreeably to the aforesaid requests, but in the manner and with the limitations as before stated, whereupon defendant excepted.

The jury returned a verdict for the defendant, which plaintiff moved to set aside.

*Burke & Wait*, for plaintiff.

*A. & S. H. Edes*, for defendant.

PERLEY, C. J. At the time of the plaintiff's marriage, his wife owned a farm in her own right, and the stock and personal property on it. She retained possession and control of the personal property with his consent. As the law is held in this State such personal property must be reduced by the husband to his possession before it becomes his. While this personal property remained in the wife's possession, she sold a part of it and took this note for it payable to herself or order. The

plaintiff's suit-is on this note. By claiming on the note he ratifies and confirms the action of his wife in selling the property and taking this note for it; and is estopped to deny that she sold the property and took the note in this form with his consent and by his authority.

At the common law the money and the personal chattels of the wife vested in the husband on the marriage without any act asserting his marital right; but in this State the personal chattels of the wife remain hers until the husband reduces them into his possession with the intention of making them his own; and in this respect there is with us no distinction between the personal chattels of the wife and her choses in action. *Marston* v. *Carter*, 12 N. H. 159; *Coffin* v. *Morrill*, 22 N. H. 357; *Cutter* v. *Butler*, 25 N. H. 343, 355; *Hall* v. *Young*, 37 N. H. 134; *Jordan* v. *Cummings*, 43 N. H. 137. And if the personal chattels of the wife left by the husband in her possession and control are, with his consent, changed into others, or into securities for money, without any intention to assert his marital right of making the property his own, the substituted property will still belong to the wife. *Coffin* v. *Morrill*, *qua supra*.

In this case the note, having been taken by the wife with the husband's consent for her property left by him in her possession and control, the note belonged to her as the property did, for which it was taken. There is nothing here tending to show an intention on the part of the husband to claim the note until he forbade payment to the wife; and till he interfered to reduce it to his possession it would belong to the wife. The wife did not act, in selling the property and taking the note, as agent of the husband, but in her own behalf, and in the management of her own property, left by his consent in her control.

At the common law a note given to the wife after marriage and made payable to her may be treated by the husband as a note payable to himself, because, inasmuch as the money and goods of the wife vested immediately in the husband, payment of the note, whether made directly to the husband or into the hands of the wife, vested the money in the husband, and was in legal effect a payment to him; for the money paid was his. In taking the note and in receiving payment, the wife acted as the mere agent of the husband. If the wife survived him and the note remained unpaid, she might then, being *sui juris*, receive the money on it to her own use, and so the husband might join her with himself in a suit on the note, and the judgment, if she survived, would belong to her. But, by the law as held in this State, when the wife takes a note with the assent of the husband for her property left by him in her hands, she does not act as his mere agent in the transaction; the note belongs to her, and if she receive the money on it according to its tenor, the money is hers and not the husband's; unless the husband has in some way revoked the authority of the wife to treat the note as her own. In this respect the law in this State has departed from the rule of the common law, which inclined to construe all acts of the wife as done in behalf of the husband and as his agent.

When the husband allows the wife to retain possession of her personal property, and has given her authority to sell it and take a promis-

sory note payable to herself or order. we think, in this State, an authority is implied for the wife to receive the money and hold it, as she held the property for which it was given, to her own use; and also to endorse the note according to its tenor; and payment to the wife or endorsement by the wife will be good until the authority implied in the transaction is revoked. No such authority would be implied at common law, because payment of the note, under the rule of the common law, immediately and necessarily vested the money paid in the husband, and payment to the wife was, in legal effect, payment to the husband, But in this State the law is different; payment to the wife of money due on a security belonging to her and left in her control, is a payment to her; and the money paid belongs to her as the security did, on which it was received. In this State there is no difficulty in giving effect to a promissory note made payable to the wife or order, according to the terms and tenor of the note.

It would seem to follow that, in this State, if the husband gives his wife authority to sell her personal property and take for it a promissory note payable to herself or order, he gives her authority to endorse the note according to its tenor, and to hold the proceeds to her own use, and until this authority is revoked her endorsement of the note will be good to pass the title in it, though not to bind either her or the husband as endorser. For it is well settled that if the husband give the wife express authority to endorse a note payable to her or order her endorsement is good to transfer the note and may be made in her own name, though she acts by authority of the husband and as his agent. *Stevens* v. *Beal*, 10 Cush. 291; *Leicester* v. *Biggs*, 1. Taunt. 367; *Prest*. *wick* v. *Marshall*, 1 Bing. 565; S. C. 4 Car. & Paine, 5º4; *Brown* v. *Dunnell*, 49 Maine 425.

We are therefore of opinion, that, under the law of this State, the wife was the legal payee of the note, entitled to receive payment on her own account, and not as agent of the husband; and also authorized to endorse the note in her own name until the authority implied in the transaction was revoked by the husband.

This brings us to the question, whether there is anything in the case, which tends to show that the authority to endorse, once given, was revoked before the endorsement. There is nothing that can be supposed to have been intended as a revocation of the authority to endorse, except that, in November, 1859, ten months after the note was given, "the plaintiff went to the defendant and gave him notice not to pay the note in question to his wife."

In the first place the legal presumption is, in the absence of proof to the contrary, that the note was endorsed within a reasonable time after it was made and before it was discredited; and there is nothing here to control that presumption; but the note, being payable on demand, was discredited long before this notice, which was not given until ten months after the note was due.

Then again, a mere notice to the maker not to pay the note to the wife cannot be regarded as a revocation of the wife's authority to endorse. It is not in the form of a revocation; nor is it a revocation in

substance.　How can this notice to the maker, not to pay to the wife, neither addressed to the wife, nor communicated to her, and unknown to the endorsee at the time of the endorsement, be treated as a revocation of the authority to endorse?　And it is to be observed that the case does not show any objection on the part of the plaintiff to an endorsee's right under the endorsement of the wife, nor to payment by the defendant to an endorsee, till this suit was brought.　He gave the defendant notice that he should not pay to the wife; but said nothing against his paying to an endorsee; and did not then ask for payment to himself. And when the defendant, on the 13th of August, 1860, gave him notice that he was sued on the note by an endorsee and should pay to him unless he had an indemnity, the plaintiff gave no indemnity, did not come up to defend, and does not appear to have made any objection that payment should be made to the endorsee.

We think that the wife had authority to endorse the note; that there is nothing in the case tending to show that the authority was revoked before the endorsement; that the wife's endorsement transferred the note to the endorsee; and that consequently payment to him was payment of the note: and the conclusion is that the plaintiff had no case on which he could ask for a verdict, and of course the verdict for the defendant was right.

This makes it unnecessary to consider the other questions raised on the case.

*Judgment on the verdict.*