## WINER v. BANK OF BLYTHEVILLE.

### Opinion delivered March 1, 1909.

1. COURTS—JURISDICTIONAL AMOUNT.—Where five notes, each for the sum of $100, were transferred as collateral security for a total indebtedness of $604, the assignee could not combine the several notes so as to give the circuit court jurisdiction. (Page 440.)

2. BILLS AND NOTES—HOW VALIDITY OF ASSIGNMENT QUESTIONED.—The assignment of a promissory note by the payee is presumed to be regular and valid, in a suit thereon by the holder, unless the defendant annexes to his answer an affidavit denying such assignment, as required by Kirby's Digest, § 517. (Page 441.)

3. SAME—TRANSFER BY CORPORATION—VALIDITY.—Though a corporation's indorsement of negotiable paper be *ultra vires,* so that it incurs no liability thereby, it nevertheless passes title to the paper. (Page 443.)

4. SAME—VALIDITY OF TRANSFER—WHO MAY QUESTION.—As a general rule, the maker of a note cannot question the authority or capacity of the payee to make a transfer thereof. (Page 443.)

5. SAME—TRANSFER—DEFENSE.—The maker of a note to a corporation cannot defend against a suit by a transferee because of invalidity or want of power in the transfer by the payee where the latter does not contest the plaintiff's right to collect the note. (Page 445.)

6. CORPORATIONS—DIRECTORS' MEETINGS—WAIVER.—A corporation, by its board of directors and shareholders, may waive the necessity for a meeting of its board of directors for the transaction of business of the company by permitting the directors to establish a custom of assenting separately to the making and performance of contracts by their agents. (Page 446.)

7. SAME—HOW AUTHORITY OF AGENT PROVED.—The authority of an agent to act for a private business corporation may be established by proof that he was held out to the public as possessing such power or that the corporation has acquiesced in or ratified his acts as such agent. (Page 446.)

8. SAME—RIGHTS OF CREDITORS.—The fact that the makers of notes given to a corporation were simple contract creditors of the corporation did not entitle them to question the validity of a transfer thereof in a suit upon the notes. (Page 447.)

9. BILLS AND NOTES—PAYMENT TO ONE NOT THE HOLDER.—If the maker of a negotiable note pays the same to the payee, who is not the holder, he is not discharged from his obligation to the holder without showing that the payee was authorized to receive payment or that the holder led him to believe that he was so authorized. (Page 448.)

10. SAME.—It was not error to refuse to instruct the jury that if the holder of a series of notes permitted the payee's agent to collect any of such notes then the maker had a right to pay all of the notes to such agent. (Page 449.)

Appeal from Mississippi Circuit Court; *Frank Smith,* Judge; affirmed.

### STATEMENT BY THE COURT.

Appellee, who was plaintiff below, instituted this suit against appellants, A. M. Winer and Ike Levine, who were defendants

below, upon five promissory notes which had been executed by them to the order of the Archillion Plantation Company. Within ten days after the execution of these notes, they were duly indorsed by the payee thereof and then transferred to the Mississippi County Bank, and by the latter transferred to the appellee. The notes were executed on February 18, 1904, and were for $100 each, maturing respectively on the first day of February, the first day of March, the first day of April, the first day of May and the first day of June, 1906.

This suit was instituted on these five notes before a justice of the peace, and by him a judgment was rendered for the full amount of the notes in favor of the plaintiff; and the defendants appealed to the circuit court. The consideration for these five notes was a part payment for a stock of goods which was purchased by the defendants from the Archillion Plantation Company. The Archillion Plantation Company was a private business corporation, organized in February, 1903. Its capital stock was divided into eight hundred shares, of which Reginald Archillion and his wife, whom he represented as agent, owned 796 shares. Reginald Archillion was treasurer of the company, and from the date of its organization and continuously during its existence he was the sole manager of its properties and business affairs. The evidence tended to prove that, by an agreement of the board of directors of the company, he was given full power and authority to transact any and all of the business of the company; and with the knowledge and consent of its board of directors—in fact, of all of the five stockholders of the corporation—he had unlimited authority to do and transact all of the business of the company, and was permitted and authorized to execute and indorse the notes and paper of the company. The evidence tended to prove that the officers and stockholders of the company held him out to the world as having full authority to do and perform any act and thing relative to the business and assets of the company.

In February, 1904, Reginald Archillion, on behalf of the company, sold to the defendants a stock of merchandise, and as part payment therefor took 29 notes, each of which was for the sum of $100, and they matured respectively on the first day of March, 1904, and on the first day of each succeeding month thereafter. They were made payable to the order of the Archillion

Plantation Company, and were signed by the defendants, and were indorsed and guarantied before delivery by one Sam Levine. Five of these notes are the ones upon which this suit was instituted. Reginald Archillion had been given by the officers and stockholders of the company such full control and management over its properties, and was held out to the world as having such full management thereof, that when the sale of the stock of merchandise was made to the defendants, one of them, Ike Levine, testifies that he did not know whether he was buying from Reginald Archillion or from the company. In February, 1904, Reginald Archillion was individually indebted to the Mississippi County Bank in the sum of $2,500; the five notes herein sued on, and about fifteen of the other notes which had been executed by the defendants to the Archillion Plantation Company had been duly indorsed in blank by the Archillion Plantation Company by a written indorsement thereon duly signed by that company, and all these notes were duly transferred by it, and within ten days after the execution of the notes, and before the maturity of any of them, Reginald Archillion delivered and transferred the same to the Mississippi County Bank to secure his said indebtedness to that bank. His indebtedness was subsequently reduced to $1,500, and on May 24, 1904, the indebtedness was extended for six months by the execution of a new note by him to the Mississippi County Bank, and the notes of the defendants were still retained and held by the bank by virtue of said transfer to it as collateral security for the payment of said note.

In 1904 Reginald Archillion was president of the Mississippi County Bank, and continued as such until June, 1905. In 1907 the Mississippi County Bank consolidated with the Bank of Blytheville, and the said individual note of Reginald Archillion, and all the said notes of the said defendants which were collateral thereto, were transferred to and became the property of the appellee.

During the years of 1904, 1905 and 1906, the Archillion Plantation Company was engaged in farming and other business, and during those years purchased goods and merchandise from the defendants, who were conducting a mercantile business. The company purchased these goods upon a running account, which continued during each month of said years, and amounted in the aggregate to several thousand dollars, upon which account pay-

ments were credited from time to time. In selling these goods to the company, and in transacting this business, the defendants actually had the transactions with Reginald Archillion for the Archillion Plantation Company, and they gave the credit, relying on Reginald Archillion and the solvency of the company. It is claimed by the defendants that they paid all the 29 notes which had been executed by them to the Archillion Plantation Company in the following manner: Some of the notes they paid in cash, and some of them they paid by crediting the amounts of the notes on the above running account. They claim that they would make payment in cash to Reginald Archillion on some of the notes, and after such payments he would deliver to them the note so paid; or they would give credit upon the account on their books to the amount of certain of said notes, and then Reginald Archillion would bring to them the notes and deliver same to them. At the time of such payments on said notes and at the time of giving credit on the account for any of said notes the notes themselves were never actually present or delivered to them, but it was always after such payments or credits given that the notes were actually brought by Archillion and delivered to them. The evidence tended to show that the defendants knew that the notes were at the Mississippi County Bank prior to any of such payments or credit given; but they claim that they thought that the notes were at said bank for safe keeping by Reginald Archillion.

It is conceded that they paid the first note, maturing March, 1, 1904, by check to the Mississippi County Bank, and that the indorsement of payment on this note was signed by the Mississippi County Bank. On the trial of the cause, defendant Ike Levine, who was manager of the mercantile business of defendants, testified as a witness; and he was asked how many of the notes had been paid, and he replied 24. He was then asked if there were not five of the notes then that had not been paid, and he replied that there were. Subsequently, however, he testified that all of the twenty-nine notes were paid. Upon the books of the defendants there appears upon the account of the Archillion Plantation Company the following credit: "Notes to be paid—Cr. $1,900." The notes thus referred to in this entry of credit were notes that **had been executed by** defendants to the Archillion Plantation Company, and this entry is of blank date. It is claimed by the

defendants that, after the allowance of all credits for all of said notes, there was still due to the defendants by the Archillion Plantation Company the sum of $905.71, which was subsequently paid by that company.

At the time of the institution of this suit, the appellee still held and claimed title to the five notes herein sued on as security for the said indebtedness of Reginald Archillion to it, which then amounted to $604, and which was less than the amount, with interest, that was due upon said five notes.

Upon a trial of the cause in the circuit court, a verdict was rendered in favor of plaintiff for $604; and from the judgment rendered thereon this appeal is prosecuted.

Appellant, *pro se.*

1. The cause of action was the balance due on the note, $604, and the justice of the peace had no jurisdiction. The circuit court acquired none on appeal. Kirby's Dig. § 4552.

2. Reginald Archillion was without authority to pledge the company's paper to secure his individual debt. The company itself, through its board of directors, could not authorize him to do so, nor could they afterwards ratify it. 84 N. E. 585; 62 Ark. 33; 61 Ark. 317; 85 Ark. 185.

*Murphy, Coleman & Lewis,* for appellee.

1. The maker of a note cannot question the capacity of the payee to indorse. Joyce on Defenses to Com. Paper, § 95; 49 Me. 421; 29 N. Y. 554; 109 Ind. 313; 4 Espinasse, 187; 3 Doug. (26 E. C. L.) 65; 24 Cal. 195; 14 Ind. 382; 38 Me. 450; 3 Hurlst. & N. 222; 15 Mass. 271.

Under the statute appellee would not be required to prove the assignment, without an affidavit attached to the defendant's answer denying such assignment. Kirby's Dig. § 517; 48 Am. Dec. 329. One who pays without the production of the note paid on does so at his peril. 75 Ark. 170; 55 Ark. 347; 10 Cyc. 1028.

2. The court had jurisdiction. 35 Ark. 287.

FRAUENTHAL, J., (after stating the facts.) This suit was originally instituted in the court of a justice of the peace upon five several notes, each of which was for the sum of $100. These notes had come to the appellee by successive transfers from the payee as collateral security for a total indebtedness of $604.

It is urged by the appellants that because the amount that was due to appellee from the party who had transferred to it these notes as collateral security was in excess of $300, the justice of the peace did not have jurisdiction. But the causes of action upon which the suit was instituted before the justice of the peace were the five several notes sued on, and not the indebtedness that was due from the party who had transferred these notes to the appellee. The appellee, having title to these five notes, instituted suit thereon, as it had a right to do, against the appellants; so that the several causes of action, or several debts herein sued on, were represented by these several notes. Now, this court has held that where no one of several debts sued on exceeds the sum of $100, the plaintiff can not combine them so as to give the circuit court jurisdiction. *Mannington* v. *Young,* 35 Ark. 287. And consistently with that opinion, and uniformly since then, this court has held that the amount of each separate demand or cause of action, and not the aggregate of the various causes which may be joined in an action, determines the jurisdictional amount. *Paris Merc. Co.* v. *Hunter,* 74 Ark. 615; *Brooks* v. *Hornberger,* 78 Ark. 595; *American Soda Fountain Co.* v. *Battle,* 85 Ark. 213. Inasmuch as these five notes were each for the sum of $100, the justice of the peace had jurisdiction of this suit.

The notes sued on were executed by the appellants to the Archillion Plantation Company in February, 1904. They were executed for a valuable consideration, and there is no question made with reference to their validity. These notes were transferred to the Mississippi County Bank in February, 1904, long before the maturity of the notes, and thereafter became the property of the appellee, who became the successor of the Mississippi County Bank. It is contended that these notes were transferred to the Mississippi County Bank in order to secure an individual indebtedness of Reginald Archillion to the Mississippi County Bank; that on this account Reginald Archillion had no power or authority to transfer the notes of the corporation, and the appellants contend that on this account said transfer and assignment was invalid, and that the appellee can not recover thereon against them.

Now, this is an action, not brought against the corporation,

but brought by the assignee and holder of the notes directly against the makers. The corporation is not making any defense or objection to the prosecution of this suit. It does not raise any question as to the transfer of the notes, and does not claim that its treasurer did not have the authority to transfer the notes or that his act in so doing was *ultra vires.* The notes themselves show a proper assignment thereof, and thereby the title to the property passed to the transferree. If the corporation itself was being sued upon the indorsement, it would be necessary for it to plead as a defense the invalidity of such transfer; and, unless that was done, the assignee would not be required to prove the assignment or the consideration therefor. Unless that was done, it could not be shown that the transfer of the notes was made for an illegal or unauthorized purpose or consideration. It is provided by our statute (§ 517, Kirby's Digest) that "the assignees of any instrument in writing made assignable by law, on bringing suit thereon, shall not be required to prove said assignment, unless the defendant shall annex to his answer an affidavit denying such an assignment, and alleging that he verily believes that one or more of the assignments on such instrument was forged." It is further provided (Kirby's Digest, § 518) that "it shall not be necessary for any assignee to set forth the consideration of any of the assignments of any such assigned paper."

In the case of *Simon* v. *Calfee,* 80 Ark. 65, this court held that "a corporation cannot avail itself of a want of power or lack of authority of its officers to bind it unless the defense is made on such grounds."

In 6 Thompson on Corporations, § 7617, it is said: "In all cases, if there was a want of power in the corporation or in its officer to make the contract, that is a matter of special defense, which must be pleaded by the defendant;" and the same author further says (§ 7619): "A corporation cannot avail itself of the defense that it had no power to enter into the obligation to enforce which the suit is brought, unless it pleads that defense. This principle applies equally where the defendant intends to challenge the power of its officer or agent to execute in its behalf the contract upon which the action is brought, and where it intends to defend on the ground of a total want of power in the

corporation to make such a contract;" and that it is not only neces-
sary to plead the defense of the *ultra vires,* but the facts must
be shown by the corporation that the instrument was issued or
the act done contrary to law.   *City Waterworks* v. *White,* 61
Tex. 536.

Now, in this case the corporation itself did not make, accord-
ing to the evidence, any objection at any time to the transfer of
these notes.   The evidence tends to prove that the cor-
poration and all its directors and stockholders, after full
knowledge that the transfer of these notes had been
made, acquiesced therein; and they are now and have always
been satisfied with said transfer.   In this case no affidavit was
made by the defendants denying the assignment of these notes
as required by the above section of Kirby's Digest.   It follows
therefore that it was not necessary for the present holder of
said notes to set forth the consideration of such assignment, and
that the assignment is therefore presumed to be perfectly valid
and made for a perfectly legitimate purpose and consideration.
Even though the corporation might have been permitted, if it had
been sued, to show the invalidity of the transfer of these
notes, still, as is said in Joyce on Commercial Paper at § 279, "if a
corporation's indorsement of negotiable paper is *ultra vires,* and it
incurs no liability thereby, its effect nevertheless is to pass the
property therein."   It follows, therefore, that the title to the
notes herein sued on passed to the appellee, and it became the
owner thereof; and that the validity of the assignment thereof
could not be attacked by the defendant under the pleadings made
in this action.

Now, as before stated, the corporation is making no defense
to this suit, and is not objecting to the right of appellee to sue for
the recovery of these notes, but on the contrary has acquiesced
both in the transfer of the notes and in the institution of the suit
thereon by the appellee.   It is the makers of the notes only who
are endeavoring to set up the want of power and authority to
transfer these notes.   They do not dispute the validity of the
notes, or that they were liable thereon at the time they were
transferred.   That is clearly shown by the evidence.   As a general

rule, the maker of a note can not question the authority or capacity of the payee to make a transfer thereof. 7 Cyc. 783. In Joyce on Commercial Paper, § 95, it is said: "The maker of a note is only interested in paying the same to one who is authorized to receive payment and to discharge him from liability, and the fact that a transaction between corporations in consequence of which the note held by one of the corporations has been transferred to the other was unauthorized does not constitute a defense by the maker."

In the case of *Brown* v. *Donnell*, 49 Me. 421, it is held that, "in an action by the indorsee of a note against the maker, the plaintiff is only required to prove an indorsement sufficient to pass the property in the note." And, further, the court said: "The authority to be proved is not one to bind the corporation by a contract of indorsement—but simply an authority to transfer the property. * * * * If the indorsement is sufficient to pass the property, so as to protect the maker in paying the note, that is all that is necessary to render him liable to the indorsee."

In the case of *Wofe* v. *Kuhne*, 109 Ind. 313, a note was made payable to "T. W. Woollen, Attorney General," and by him indorsed to one Kuhne, who brought suit thereon; and to the defense made by the maker that the assignment was unauthorized and invalid the court said: "We are clearly of the opinion that the appellants are not in a situation to dispute the authority of the payee to accept and transfer the note executed by them. Whatever may be the right of the State, it is certain that appellants can not successfully present the question of the authority of T. W. Woollen to take or transfer the note executed to him. That is a question between him and the State, with which these appellants have no concern."

In the case of *City Bank of New Haven* v. *Perkins,* 29 N. Y. 554, a loan was made to the Bank of Akron, and its cashier obtained the money individually and converted same to his individual use. As security for that loan, the cashier transferred certain bills of exchange held by the bank. In a suit on these bills, the acceptor pleaded want of capacity in the cashier to transfer them, and that therefore the plaintiff in that case was not the lawful holder thereof. In that case it was held that the acceptors of the bills could not set up, as a defense to an ac-

tion thereon, that the same were still the property of the Bank of Akron, and that they had been transferred or pledged to the plaintiff in that case as security for a loan made by the cashier who had no authority to transfer or pledge them. The court said: "It is sufficient if the plaintiff's title is good as against the defendant. If there are any others who claim a title to the bills superior to that of the plaintiff, it can be determined whenever they come before the court to assert it." And further the court said: "Even if it should be held, as between the Bank of Akron, or its legal representatives, and the plaintiffs, that the latter were bound to inquire into the authority of the cashier and take notice of its extent (as to which I shall express no opinion), it is a question which in no way concerns the defendant, and upon which he cannot be allowed to defend, and escape the payment of his obligations."

In the case of *Ehrman* v. *Ins. Co.*, 35 Ohio St. 324, a certain note was transferred by one corporation to another which was unauthorized by the charters of the companies; and on that account it was claimed that the transfer of the note was illegal, and that the title of the plaintiff was inoperative. Upon suit being brought by the assignee of the note against the maker, this defense was made. In that case the court says: "The validity of the note sued on is admitted. The only defense relied on is that the plaintiff, the purchasing company, has not such a title to the note as will enable it to maintain the action. According to the principles already stated, the fact that the agreement between the companies is unauthorized by their charters does not constitute a defense by the maker of the note. As a debtor, he is interested in paying the note only to a party who is authorized to receive payment and to discharge him from liability. But, while the validity of the transfer is insisted upon or adhered to by the parties to it, he had no interest in questioning the title of the purchaser, as payment to the latter will discharge his liability on the note."

So in this case the notes sued on were duly indorsed and transferred by the payee, and the title thereto became invested in the appellee. The makers of these notes admit the validity thereof; the corporation, its officers and stockholders do not contest the right of appellee to hold and collect the same; the

makers of these notes can therefore not now defend against a recovery on the ground of invalidity or want of power in the transfer thereof by the payee.

It is contended by appellants that there were no minutes or written evidence of the proceedings of the board of directors of the corporation authorizing the transfer of these notes, and that any other testimony as to that was incompetent. But a corporation, its board of directors and shareholders, may waive any necessity of a meeting of its board of directors for the transaction of the business of the company. "They can do so by permitting the directors to establish a habit or usage of assenting separately to the making and performance of contracts by their agents. By permitting such usages or habits to be formed by a long course of business, they adopt and become bound by them, so long as they acquiesce. If this were not so, great injustice might be done to parties contracting with them in their usual way." *Estes* v. *German National Bank,* 62 Ark. 7; *Stiewel* v. *Webb Press Co.,* 79 Ark. 45. And so, in the case of *Bank of U. S.* v. *Dandridge,* 12 Wheat. 64, it was held that parol evidence was admissible to show the acceptance of a bond by the officers of a corporation; and it is further held in that case that the acts of the corporate officers were admissible as evidence from which the fact of the acceptance of said bond might even be inferred, and that it was not indispensable to show a written evidence of a vote on the corporation's books.

In *Brown* v. *Donnell,* 49 Me. 421, it is held that the authority of an agent of a corporation to indorse a note may be shown by other evidence than the by-laws.

The rules governing the authority of an agent to act for a private business corporation, and the proof thereof, are in many regards the same as between agents of natural persons. The authority of an officer to act for a corporation may be established by proof that he was held out to the public as possessing those powers which he exercised in a given case, or that the corporation has acquiesced in or ratified such acts. 10 Cyc. 916; 3 Cook on Corporations, § 714.

In this case the evidence shows that the Archillion Plantation Company was a private business corporation, and that substantially its entire stock was owned by Reginald Archillion,

its treasurer, and his wife, whose agent he was; that he was the sole manager of the corporation from its beginning, and that by agreement with and authority of the board of directors— and, in fact, all the shareholders of that corporation—he had full power to transact any and every kind of business connected with such corporation, and was authorized to execute and transfer its notes and papers. He was thus held out to the world by the corporation and its officers. But, in addition to this, the transfer of these notes was known to the board of directors and to all the shareholders of the corporation, and has been known to them ever since they have been transferred. They have not objected to such transfer at any time, but on the contrary have acquiesced in and recognized the authority of the transfer.

It is contended by appellants that they are creditors of the corporation, and on that account should have the right to set up the invalidity of the transfer of these notes. But a simple contract creditor can not sue to make the directors or officers account for *ultra vires* or illegal acts. He has no interest in any particular property of the corporation. A simple contract creditor of a corporation can not set aside a fraudulent sale of property made even to a director. As between itself and its creditors, a corporation is simply a debtor, and does not hold its property or any portion thereof in trust, in any sense other than as an individual debtor. By reason of any illegal act, or even the insolvency of the corporation, a simple contract debtor does not obtain any lien upon its property, nor any right to any particular portion of the property of the corporation. 3 Purdy's Beach on Private Corporations, § 988b; 3 Cook on Corporations, § 735.

In the case of *Hollins* v. *Brierfield Coal & Iron Co.*, 150 U. S. 371, it was held that a simple contract creditor of a corporation whose claims have not been reduced to judgment has no standing to obtain a seizure of the property of the corporation and its application to the payment of his debt. In the syllabus it is said: "Neither the insolvency of a corporation, nor the execution of an illegal trust deed, nor failure to collect in full all stock subscriptions, nor all together, give to a simple contract

creditor of the corporation any lien on its property, or charge any direct trust thereon." The assets and affairs of a private business corporation are in the hands of the board of directors of the corporation, and they have the full management and disposal thereof, and their acts can not be questioned by a simple contract creditor. 3 Cook on Corporations, p. 2447. It therefore follows that simply because the appellants may be creditors of this corporation they do not have any right to set up the invalidity of the transfer of these notes in this action.

It is claimed by appellants that they have made payment of these notes to Reginald Archillion or to the Archillion Plantation Company. We do not think that it is necessary to go into the evidence to determine whether or not this is shown, for the reason that if such payment was made it was not made to the holder of the notes. The appellants in 1904, when these notes were executed, and for several years thereafter, conducted a mercantile business, and furnished to Reginald Archillion and the Archillion Plantation Company merchandise upon a running account from time to time during these years through their store; and it is claimed that through these accounts for merchandise, and also by the payment of cash, the notes involved in this suit were paid. But, long before any merchandise was furnished to the Archillion Plantation Company, the notes involved in this suit had been transferred and indorsed to the Mississippi County Bank.

It is claimed by appellee that, long before the maturity of the notes involved in this suit, the appellants knew of such transfer. But we do not think that it is necessary to determine that in this case, because the payment of a note should be made to the rightful holder thereof, and payment to a person who is not in possession of the instrument is wholly at the risk of the payer. 7 Cyc. 1028. In the case of *Jenkins* v. *Shinn*, 55 Ark. 347, the syllabus reads: "If the maker of a negotiable note pays the same to the payee, who is not the holder, he is not discharged from his obligation to the indorsee and holder without showing, either that the payee was authorized to receive payment, or that the holder led him to believe that he was so authorized." *State Nat. Bank of St. Louis* v. *Hyatt*, 75 Ark. 170; *Cheney* v. *Libby*, 134 U. S. 68.

From February, 1904, until the institution of this suit, the Mississippi County Bank and the appellee were the holders of these notes. At the time the appellants claim they made payments thereon, the notes were not in the possession of Reginald Archillion, to whom they claim to have made the payments; and so, if they made such payments, they did so at their own risk.

The appellants asked an instruction, which is numbered six, in which they asked the court to instruct the jury in substance that if the Mississippi County Bank, while holding the notes as collateral security, knowingly permitted Archillion, personally or as treasurer of the Archillion Plantation Company, to collect any of said notes and deliver any of said notes to defendants upon such collection, then the defendants had a right to pay all of said notes to him. But this is not correct, and does not follow. It is true that if the holder of the notes involved in this suit had led the appellants to believe that Reginald Archillion, personally or as treasurer of the Archillion Plantation Company, was authorized to collect these notes involved in this suit, then the appellants would be discharged if they had paid them on such supposed authority. But this instruction does not present that defense. It simply says that if the Mississippi County Bank permitted Archillion, personally or as treasurer of the Plantation Company, to collect *any* of said 29 notes, then the defendants had a right to pay *all* of said 29 notes to him. Now, the Mississippi County Bank may have released some of the notes after they had obtained them, or resold or retransferred them to Archillion; and if they had done that with some of the notes, it would not affect their title to the remaining notes which they still retained.

We have carefully examined the instructions that were given on the part of appellee and those refused on the part of appellants, in connection with the testimony and the circumstances of this case, and we are unable to say that error has been committed in the giving or refusal of any of them under the facts of this case. It therefore follows that the judgment of the lower court must be affirmed, and it is so ordered.