### FEDERAL RESERVE BANK OF RICHMOND v. KALIN.

#### No. 3957.

Circuit Court of Appeals, Fourth Circuit.

Feb. 22, 1936.

1004

M. G. Wallace, of Richmond, Va. (G. H. Valentine, of Hendersonville, N. C., on the brief), for appellant.

Thomas H. Franks, of Hendersonville, N. C., for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal from a judgment in favor of the defendant in an action instituted to recover on a promissory note. On a former appeal we reversed an order dismissing the cause for lack of jurisdiction. Federal Reserve Bank of Richmond v. Kalin (C.C.A.4th) 77 F.(2d) 50. The note sued on was executed by defendant to the Citizens National Bank of Hendersonville, N. C., on October 14, 1930, and was payable two months after date at the banking house of that bank at Hendersonville. Two days after its execution it was discounted by the payee with plaintiff and has been held by plaintiff ever since. On November 20, 1930, shortly before the payee closed its doors, and twenty-four days before the note was due, defendant paid the amount thereof to the payee by a check on his deposit account with that bank, knowing at the time that the bank did not have the note in its possession. His defense was (1) that, in collecting the amount due on the note, the payee was acting as agent of the plaintiff and (2) that the action was barred by the three-year statute of limitations. The jury under special issues, submitted in accordance with the North Carolina practice, found that the note was not a sealed instrument, that action thereon was not barred by the statute of limitations, and that, in accepting payment thereof, the payee was acting as agent for the plaintiff. Judgment was thereupon rendered for defendant, and plaintiff has appealed, assigning as error the holding of the trial court that there was evidence to go to the jury on the issue of agency and the court's refusal to instruct the jury to answer that issue in favor of plaintiff.

We agree with plaintiff that there was no evidence to justify the submission of the case to the jury on the question of agency and that verdict should have been directed in its behalf. Defendant introduced no evidence to show that plaintiff had authorized the payee bank to collect the note sued on or any notes other than those sent payee from time to time for collection. Defend-

ant contends, however, that, because of the connection between the Federal Reserve Bank and its branches, because payee did from time to time collect notes which it had discounted with or pledged to plaintiff and was allowed by plaintiff to withdraw such notes from its hands upon paying them or substituting others in their stead, and because plaintiff was accustomed to send to payee for collection at maturity notes which payee had discounted or pledged with it, the jury were justified in inferring that the payee was authorized by plaintiff to collect notes which had been discounted with it, even though they had not been sent to payee for collection. We cannot agree with this contention.

■ Plaintiff and its member banks are separate and distinct corporate entities, and no agency exists on the part of one to act in behalf of the others, except such as arises from contractual relationships sufficient to establish agency between any other banks. See Federal Reserve Bank v. Early (C.C.A. 4th) 30 F.(2d) 198, Early v. Federal Reserve Bank, 281 U.S. 84, 50 S.Ct. 235, 74 L.Ed. 718. So far as the collection of pledged or discounted notes in advance of maturity is concerned, the evidence as to this amounts to no more than that plaintiff on several occasions allowed the payee to substitute one note for another that had been pledged with it, or to pay before maturity notes which it had indorsed and discounted. Even if plaintiff had known, which does not appear, that these notes had been paid to the payee by the makers, this would not tend to show that plaintiff was holding out the payee as authorized to collect for it notes which it had not forwarded for collection. It shows nothing except that the plaintiff as holder of the notes was willing to accept payment or to accept one note in pledge in lieu of another.

■ The case on the question of agency, then, comes to this: Could agency on the part of the payee to collect notes discounted with and still held by plaintiff be inferred from the fact that plaintiff had been accustomed to send to payee for collection the notes which payee had discounted or pledged with it? Or, to state the question differently, should authority to collect notes not sent to payee, and not due, be inferred from authority to collect those that were sent to payee for collection on maturity? The authorities leave no room to doubt that this question must be answered in the negative. Cheney v. Libby,

134 U.S. 68, 82, 10 S.Ct. 498, 33 L.Ed. 818; Ward v. Smith, 7 Wall. 447, 19 L.Ed. 207; International Banking Corporation v. McGraw T. & R. Co. (C.C.A.6th) 259 F. 381, 386, 387; Ilgenfritz v. Mutual Benefit Life Ins. Co. (C.C.) 81 F. 27, 32; Carroll v. Zerbst (C.C.A.10th) 76 F.(2d) 961; Smith v. Kidd, 68 N.Y. 130, 23 Am.Rep. 157; Winer v. Bank of Blytheville, 89 Ark. 435, 117 S.W. 232, 131 Am.St.Rep. 102; Hoffmaster v. Black, 78 Ohio St. 1, 84 N.E. 423, 21 L.R.A.(N.S.) 52, 125 Am.St.Rep. 679, 14 Ann.Cas. 877; Wynn v. Grant, 166 N.C. 39, 81 S.E. 949, 954; Adler v. Interstate Trust & Banking Co., 166 Miss. 215, 146 So. 107, 87 A.L.R. 347, and note at page 359; 21 R.C.L. 28. By these cases the following rules are established: (1) That the payee of negotiable paper who has assigned it to another is not the agent of the holder for collection, even though the paper be made payable at the banking house of the payee; (2) that payment of money due on a written instrument to such a payee, who has neither possession of the instrument nor authority to receive the payment, will not discharge the instrument; (3) that authority to collect particular instruments which are intrusted to an agent for collection does not confer authority to collect others of which he is not given possession, and one who pays to him the amount of an instrument not in his possession does so at his own risk; and (4) authority to receive payment of an instrument upon maturity does not carry with it authority to receive payment before the instrument is due.

The leading case on the subject is Smith v. Kidd, supra, where Mr. Justice Rapallo, speaking for the Court of Appeals of New York, said: "If money be due on a written security, it is the duty of the debtor, if he pay to an agent, to see that the person to whom he pays it is in possession of the security. For though the money may have been advanced through the medium of the agent, yet, if the security do not remain in his possession, a payment to him will not discharge the debtor. Henn v. Conisby, 1 Ch.Cas. 93, note. And even the agent being usually employed in the receipt of money, does not in this instance constitute such authority as will serve the debtor. It has been so held in respect to money paid upon a bond to one who usually received money for the obligee, but who had not the custody of the bond in question (Gerard v. Baker, 1 Ch.Cas. 94), and even where the obligor had for several years paid the interest and part of the principal to an

agent of the lender through whom the money had been borrowed, who had not the possession of the bond, but had regularly paid the money over to the obligee except the last payment, the obligor was adjudged to pay the last sum over again. For it was held, notwithstanding the hardship of the case, that the circumstance of the agent's having before received the interest and part of the principal, did not imply that he had any authority to receive it, but as long as he paid it over all was well, and any other might have carried it to the creditor as well as he."

As this case comes from North Carolina, it is of interest to note that the highest court of that state in Wynn v. Grant, supra, in a scholarly opinion by the late Justice Walker, approved the rule as stated in Smith v. Kidd and summarized the holding of that case as follows: "(1) Payment of money due on written security, to an agent who has not either possession of the security or express authority to receive such money, is not good, and the principal may compel the debtor to pay it again. (2) The facts that a loan is made through the agent, and that he has collected the interest, and that he has, in special cases, been authorized to collect the principal of particular mortgages, are not evidence of general authority to collect moneys due his principal, and one who pays to him the amount of a mortgage, without his having the mortgage in his possession, does so at his own risk. (3) Even though an agent has authority to receive payment of an obligation, this does not authorize him to receive payment before it is due."

As the case is one of general law, we are bound by the decisions of the Supreme Court of the United States; and nowhere is the rule applicable more clearly or succinctly stated than by Mr. Justice Field, speaking for that court in Ward v. Smith, supra, from which we quote as follows: "It is undoubtedly true that the designation of the place of payment in the bonds imported a stipulation that their holder should have them at the bank, when due, to receive payment, and that the obligors would produce there the funds to pay them. It was inserted for the mutual convenience of the parties. And it is the general usage in such cases for the holder of the instrument to lodge it with the bank for collection, and the party bound for its payment can call there and take it up. If the instrument be not there lodged, and the obligor is there

at its maturity with the necessary funds to pay it, he so far satisfies the contract that he cannot be made responsible for any future damages, either as costs of suit or interest, for delay. When the instrument is lodged with the bank for collection, the bank becomes the agent of the payee or obligee to receive payment. The agency extends no further, and without special authority an agent can only receive payment of the debt due his principal in the legal currency of the country, or in bills which pass as money at their par value by the common consent of the community. In the case at bar only one bond was deposited with the Farmers' Bank. That institution, therefore, was only agent of the payee for its collection. It had no authority to receive payment of the other bonds for him or on his account. Whatever it may have received from the obligors to be applied on the other bonds, it received as their agent, not as the agent of the obligee."

As the question of the statute of limitations will probably arise upon the new trial which must be granted, and as that question is fully presented by the record before us, we feel that we should pass upon it now, and thus obviate necessity for further appeal. It appears that the note sued on bears opposite the signature of the maker the word "seal" in a parenthesis; and, if this makes the instrument a sealed instrument, the ten-year and not the three-year statute of limitations is applicable, and the action was instituted within time without regard to the action in the state court which was nonsuited, and to which we shall refer hereafter. C.S. § 437.

The fact that the instrument contains no attestation clause reciting that a seal is being used is not determinative. A. L. I. Restatement of Law of Contracts, § 100. The use of the word "seal" in a parenthesis is a sufficient sealing, if there is intention on the part of the maker to adopt this as a seal. Williams v. Turner, 208 N.C. 202, 179 S.E. 806; Burton v. Leroy, Fed.Cas.No. 2,217; Philip v. Stearns, 20 S.D. 220, 105 N.W. 467, 11 Ann.Cas. 1108, and note; note, 19 Ann.Cas. 674; 56 C.J. 895; 24 R. C.L. 693. And, in the federal courts, the intention of the maker is to be determined by the court from an examination of the instrument itself. As said in Jacksonville, M. P. Ry. & Nav. Co. v. Hooper, 160 U.S. 514, 519, 16 S.Ct. 379, 381, 40 L.Ed. 515: "Whether an instrument is under seal or not is a question for the court upon inspec-

tion. Whether a mark or character shall be held to be a seal depends upon the intention of the executant, *as shown by the paper."* (Italics ours.) And, as the word "seal" in parenthesis is in common use as a seal, its presence upon an instrument in the usual place of a seal, opposite the signature, undoubtedly evinces an intention to make the instrument a sealed instrument, which should be held conclusive by the court, in the absence of other indications to the contrary appearing on the face of the instrument itself. Langley v. Owens, 52 Fla. 302, 42 So. 457, 460, 11 Ann.Cas. 247, and note; A. L. I. Restatement of Law of Contracts, § 98 (1) and comment (a). As was well said by the Supreme Court of Florida in the case cited: "When words having definite legal meaning and effect are knowingly used in a written instrument, the parties thereto will be presumed to have intended such words to have their proper legal meaning and effect, at least in the absence of any contrary intention appearing by the instrument. * * * If this is true of words, it must be equally true as to all terms which in law have a definite meaning and effect. Notes executed as in this case have a definite meaning and legal effect, and it should be presumed that the maker intended them to have their proper legal meaning and effect; nothing to the contrary appearing by the notes as executed. The meaning and legal effect of the notes as executed should be determined by the court upon an inspection of them, and the intention of the maker in so executing them should be gathered from the terms of the notes themselves."

The salutary and reasonable doctrine thus laid down is the rule approved by the American Law Institute in its Restatement of the Law of Contracts, where the following appears: "Sec. 98. What amounts to Adoption of A Seal. (1) A promisor who delivers a written promise to which a seal has been previously affixed or impressed with apparent reference to his signature, thereby adopts the seal. ' * * Comment: a. Under the rule stated in subsection (1) extrinsic evidence is not admissible."

■ In Williams v. Turner, supra, there was a finding by the trial judge that the maker of the note had no intention of adopting the word "seal" in a scroll as his seal. Whether the court intended to hold in that case that the question of the maker's intention was one for the jury to de-termine, we need not inquire; as it is well settled that we do not, under the Conformity Act (28 U.S.C.A. § 724), follow the state courts in allocating the functions of judge and jury. Herron v. Southern Pacific Co., 283 U.S. 91, 51 S.Ct. 383, 75 L.Ed. 857. It is clear, therefore, that the instrument was one under seal, that the ten-year statute of limitations was the one applicable, and that the action was not barred under that statute.

■ But the same result would follow if the three-year statute were applicable. The note matured December 14, 1930. Action was instituted thereon in the state court on December 2, 1931. On May 29, 1934, plaintiff took a voluntary nonsuit in the action pending in the state court, paid up the costs in that action, and, on June 12, 1934, instituted this action. It appears, therefore, that the original action was instituted within less than three years after the cause of action accrued, and that the present action was instituted within less than a year after the nonsuit was taken in the original action. A statute of North Carolina, C.S. § 415, permits a new action to be instituted within one year after the taking of such nonsuit; and there can be no question as to the protection of this statute being available, although the second suit was instituted in the federal court. As was well said by the late Judge Walter H. Sanborn in Harrison v. Remington Paper Co. (C.C.A.8th) 140 F. 385, 398, 3 L.R.A. (N.S.) 954, 5 Ann.Cas. 314: "Both by the general terms of the statute and upon familiar principles the exception to the general statute and the new action were alike available in the federal court. Whenever the citizens of a state may secure a trial and decision of their controversies in its courts by original suits or like proceedings, citizens of different states have the right to the determination by the courts of the United States of like controversies between them which involve the requisite amounts. Rights created and remedies provided by the statutes of the states to be pursued in the state courts may be enforced and administered in the national courts, either at law, in equity, or in admiralty, as the nature of the rights and remedies may require. 'A party by going into a national court does not lose any right or appropriate remedy of which he might have availed himself in the state courts of the same locality.'" See, also, Jones v. Jenkins (C.C.A. 8th) 22 F.(2d) 642; Hicks v. Fordham (C.

C.A.5th) 246 F. 236; Kansas City Hydraulic Press Brick Co. v. National Surety Co. (C.C.A.8th) 167 F. 496; McCormick v. Eliot (C.C. per Mr. Justice Gray) 43 F. 469.

For the reasons stated, the judgment appealed from will be reversed.

Reversed.